IN THE CHANCERY COURT OF TENNESSEE

FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

WILLIE SHOTWELL,

Plaintiff,

vs.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

Defendant.

NO. CH-12-*1372 —1*

JURY DEMANDED

*(court stamp: SHELBY COUNTY CHANCERY COURT / AUG 30 2012 / DONNA L. RUSSELL C&M / TIME: 15:45 BY:)*

## COMPLAINT FOR DAMAGES

Plaintiff sues the Defendant and respectfully shows the Court as follows:

1. Plaintiff, Willie Shotwell ("Shotwell"), is a resident and citizen of Memphis, Shelby County, Tennessee.

2. Defendant, National Union Fire Insurance Company of Pittsburgh, PA (the "Insurer") is an insurance company incorporated under the laws of the State of Pennsylvania and qualified to do business in the State of Tennessee.  Its registered agent in Tennessee is: Tennessee Department of Commerce and Insurance, 500 James Robertson Pkwy, Nashville, TN 37243-1204.

3. Defendant is subject to the jurisdiction of this Court, and venue is proper in this Court.

4. Shotwell is a beneficiary of an Independent Contractor Courier Occupational Accident Insurance Policy, the policy number of which upon information and belief is OCC 0009100676-A (the "Policy"), a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference. The Participating Organization for the Policy is Express Courier International, Inc. The Policy is governed by the laws of the State of Tennessee. A copy of the Master Application for Independent Contractor Courier Occupational Accident Insurance is attached as Exhibit 2 and incorporated herein by reference.

5. The Policy provides various benefits for qualified beneficiaries such as Shotwell, including without limitation, an Accident Medical Expense Benefit, a Temporary Total Disability ("TTD") Benefit, and a Continuous Total Disability ("CTD") Benefit. An eligible beneficiary under the Policy may receive the CTD Benefit until reaching the age of 75.

6. Shotwell was injured at work on or about January 3, 2008. As a result of the injury and resulting medical procedures, treatments, and complications, Shotwell has been disabled and unable to work from January 3, 2008 to the present.

7. After Shotwell's injury, the Insurer paid Shotwell certain medical benefits

2

under the Policy, determined that Shotwell was Temporarily Totally Disabled under the Policy, and paid Shotwell the TTD Benefit provided for by the Policy for its maximum duration of 104 weeks, through January 29, 2010.

8. The United States Social Security Administration ("SSA") has determined that Shotwell has been disabled from September 1, 2009 to the present and is paying Shotwell Social Security Disability Income ("SSDI") benefits.

9. After the maximum duration for Shotwell's TTD Benefits was reached, the Insurer then determined that Shotwell was Continuously Totally Disabled under the terms of the Policy and eligible for CTD Benefits. Effective on or about January 30, 2010, the Insurer began paid Shotwell CTD Benefits, after subtracting the amount of Shotwell's monthly SSDI benefit, of approximately $733.00 per month. After a cost of living increase in Shotwell's monthly SSDI benefit effective in January of 2011, the Insurer paid Shotwell a CTD Benefit of $682.00 per month.

10. Even though Shotwell has complied with all conditions precedent for the CTD Benefit under the Policy; and even though the Insurer determined that Shotwell was Temporarily Totally Disabled under the Policy and paid Shotwell the maximum duration of TTD Benefits of 104 weeks under the

3

Policy; and even though the SSA determined that Shotwell is disabled and is paying Shotwell SSDI benefits; and even though the Insurer determined that Shotwell is Continuously Totally Disabled and paid him CTD Benefits; and even though the Insurer benefitted from the SSA's determination that Shotwell is disabled by reducing the amount of the monthly CTD Benefit that the Insurer paid to Shotwell; on May 17, 2012, the Insurer nevertheless sent a letter to Shotwell wrongfully and unlawfully asserting that he is no longer Continuously Totally Disabled and terminating his CTD Benefits under the Policy.  A copy of this letter is attached hereto as Exhibit 3 and incorporated herein by reference.

11. Subsequent to receipt of the Insurer's letter terminating CTD Benefits, Shotwell appealed the adverse determination and demanded payment of his claim for CTD Benefits under the Policy in letters dated May 21, May 24, June 26, and July 31, 2012, copies of which are attached hereto as Exhibits 4 through 7 and incorporated herein.  Moreover, Shotwell's counsel exchanged several emails with Insurer, copies of which are attached hereto as Exhibit 8 and incorporated herein.  Notwithstanding Shotwell's compliance with all conditions precedent to the Policy and the CTD benefit and Shotwell's demands for payment, the Insurer continues to refuse payment.

4

12. Under the terms of the policy, the Insurer owes plaintiff the sum of approximately $682.00 per month in disability benefits.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

13. The Policy is a contract of insurance between Insurer and Shotwell and/or a contract of which Shotwell is an intended beneficiary. Shotwell is eligible for the CTD Benefit under the Policy. The Insurer breached its obligations to Shotwell under the Policy by terminating Shotwell's CTD Benefit by its letter dated May 17, 2012 (Exhibit 3), thereby proximately causing damages to Shotwell of approximately $682.00 per month.

14. The Insurer's breach of contract has directly caused loss of insurance benefits and monetary damages to Shotwell, who is entitled to an award of compensatory damages of $682.00 per month from the termination of CTD benefits to the date of judgment, prejudgment interest, and a declaration that Shotwell is Continuously Totally Disabled and entitled to CTD benefits under the Policy going forward from the date of the judgment. The total of Shotwell's compensatory damages from May 2012 through August 2012 is approximately $2,728.00.

## SECOND CAUSE OF ACTION: BAD FAITH FAILURE TO PAY INSURANCE CLAIM UNDER TCA SECTION

15. Insurer's termination of Shotwell's CTD Benefits claim was not based upon reasonable grounds, but was in bad faith. For example, the Insurer purportedly based its termination decision on one telephone conversation between Karman Knight, MS, CRC of Coventry Health Care, who never personally saw Mr. Shotwell, and on a March 7, 2012 "Disability Evaluation" by a physical therapist which remarkably concluded that Mr. Shotwell "demonstrated the ability to work in the Medium DOT category except waist to shoulder lift, Light."

16. Shotwell sent demand letters to Insurer on May 24, June 26, and July 31, 2012 requesting it reinstate his CTD Benefits claim pursuant to Tenn. Code Ann. Section 56-7-105. (Exhibits 4-7). Nevertheless, Insurer continues to deny Shotwell's claim.

17. The Insurer's termination of Shotwell's claim for CTD benefits and refusal to reinstate the claim were in bad faith and in violation of Tenn. Code Ann. Section 56-7-105.

18. As a result of Insurer's bad faith violation of Tenn. Code Ann. Section 56-7-105, Shotwell is entitled to an award of CTD Benefits from the date of their

6

termination to the date of judgment, an additional 25% penalty, and his reasonable attorney fees and costs.

### THIRD CAUSE OF ACTION: VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

19. The Insured benefited when the SSA determined Shotwell was entitled to SSDI benefits, because Shotwell's monthly SSDI benefit constituted an offset to the amount of the monthly CTD benefit the Policy required Insurer to pay to Shotwell.

20. Despite the SSA's determination that Shotwell is Disabled, Insurer still terminated Shotwell's CTD benefit payments.

21. Moreover, as noted above, the Insurer purportedly based its benefits termination decision on one telephone conversation between Karman Knight, MS, CRC of Coventry Health Care, who never personally saw Mr. Shotwell, and on a March 7, 2012 "Disability Evaluation" by a physical therapist which remarkably concluded that Mr. Shotwell "demonstrated the ability to work in the Medium DOT category except waist to shoulder lift, Light."

22. Insurer makes more money when it denies and terminates valid claims by its insureds such as Shotwell.

7

23. The Insurer's termination of Shotwell's claim for CTD Benefits constitutes an unfair trade practice and a willful and/or knowing violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. Sections 47-18-101, *et seq*.

24. As a result of Insurer's violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. Section 47-18-101, *et seq*., Shotwell is entitled to an award of CTD benefits from the date of their termination to the date of judgment, treble damages, and his reasonable attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, for good cause shown, plaintiff, Willie Shotwell, demands judgment against the defendant, National Union Fire Insurance Company of Pittsburgh, PA, as follows:

(1)     that upon trial of this cause, Shotwell be awarded CTD benefits of $682.00 per month from the date of the defendant's termination of the CTD benefit through the date of judgment and going forward therefrom;

(2)     that the Court also declare that Shotwell is Continuously Totally Disabled and entitled to CTD benefits under the Policy going forward from the date of the judgment.

(3)     that Shotwell be awarded prejudgment interest, postjudgment interest, and costs;

8

(4)     that Shotwell be awarded treble damages under the Consumer Protection Act, Tenn. Code Ann. Section 47-18-109 for the Insurer's willful and/or knowing violation of the Act;

(5)     that Shotwell be awarded a 25% penalty in addition to the amount of the award for unpaid insurance benefits for the Insurer's bad faith failure to pay his claim pursuant to Tenn. Code Ann. Section 56-7-105;

(6)     that Shotwell be awarded his reasonable attorney fees pursuant to Tenn. Code Ann. Section 47-18-109, 56-7-105, and/or other applicable provisions of law; and

(7)     that Shotwell be awarded such other, further relief that the Court deems appropriate.

SHOTWELL DEMANDS A JURY TO TRY THIS CAUSE.

This the 30th day of August, 2012.


                                        Respectfully submitted,


                                        Kenneth P. Jones (#16168)


BOURLAND HEFLIN ALVAREZ MONOR & MATTHEWS, PLC
5400 Poplar Ave Ste 100
Memphis, TN  38119
(901) 683-3526 (phone)
(901) 763-1037  (fax)
kenjones@bhammlaw.com
Counsel for Plaintiff, Willie Shotwell

9



## AMERICAN INTERNATIONAL COMPANIES®

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder: Chase Bank USA , N.A., as Trustee
Policy Number: OCC 0009100676-A
Participating Organization: Express Courier International, Inc.

### INDEPENDENT CONTRACTOR COURIER OCCUPATIONAL ACCIDENT INSURANCE

This Policy is a legal contract between the Policyholder and the Company. The Company agrees to insure eligible persons of the Policyholder (herein called Insured(s)) against loss covered by this Policy, subject to its provisions, limitations and exclusions. The persons eligible to be Insureds are all persons described in the Description of Eligible Persons section of the Master Application.

This Policy is issued in consideration of the payment of the required premium when due and the statements set forth in the signed Master Application, which is attached to and made part of this Policy and in the individual enrollment forms, if any.

This Policy begins on the Policy Effective Date shown in the Master Application and continues in effect until the Policy Termination Date as long as premiums are paid when due, unless otherwise terminated as further provided in this Policy. If this Policy is terminated, insurance ends on the date to which premiums have been paid. After the Policy Termination Date, this Policy may be renewed for additional periods of time by mutual written consent of the Company and the Policyholder at the premium rates in effect at the time of renewal.

## IMPORTANT NOTICE

**THIS IS NOT A WORKERS' COMPENSATION POLICY AND IS NOT A SUBSTITUTE FOR WORKERS' COMPENSATION COVERAGE.**

This Policy is governed by the laws of the state in which it is delivered.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Policy:

President                                   Secretary

### PLEASE READ THIS POLICY CAREFULLY

**EXHIBIT**
1

C22606DBG

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Section I | General Definitions ................................................ | 3 |
| Section II | Effective and Termination Dates ............................... | 5 |
| | Policy Effective Date ............................................ | 5 |
| | Policy Termination Date ........................................ | 5 |
| | Insured's Effective Date ....................................... | 5 |
| | Insured's Termination Date ................................... | 5 |
| Section III | Premium ............................................................. | 6 |
| | Premiums .......................................................... | 6 |
| | Insured's Premium .............................................. | 6 |
| | Grace Period ...................................................... | 6 |
| Section IV | Benefits .............................................................. | 7 |
| | Principal Sum ..................................................... | 7 |
| | Deductible .......................................................... | 7 |
| | Accidental Death Benefit ...................................... | 7 |
| | Survivor's Benefit ................................................ | 7 |
| | Exposure and Disappearance ................................. | 7 |
| | Accidental Dismemberment Benefit ......................... | 7 |
| | Paralysis Benefit ................................................. | 8 |
| | Temporary Total Disability Benefit ........................... | 8 |
| | Continuous Total Disability Benefit .......................... | 11 |
| | Accident Medical Expense Benefit ........................... | 12 |
| Section V | Limits of Liability ................................................. | 15 |
| Section VI | Exclusions .......................................................... | 15 |
| Section VII | Claims Provisions ................................................ | 16 |
| Section VIII | General Provisions ............................................... | 17 |

## SECTION I                     GENERAL DEFINITIONS

**Administrator** means the Administrator named in the Schedule.

**Combined Single Limit** means, with respect to any one Insured, the total amount of benefits that are payable under this Policy for or in connection with Injury sustained as the result of any one accident. When the Combined Single Limit has been reached, no further benefits shall be payable under this Policy, with respect to that Insured, for or in connection with Injury sustained as the result of that one accident.

**Contractee** means the person, firm or other entity with whom the Insured has contracted to provide Occupational service.

**Covered Loss(es)** means one or more of the losses or expenses described in Section IV of this Policy.

**Dependent Child(ren)** means the Insured's unmarried children, including natural children from the moment of birth, step children, or adopted children, from the moment of placement in the home of the Insured, under age 19 (23 if attending an accredited institution of higher learning on a full-time basis) and primarily dependent on the Insured for support and maintenance. It also includes any unmarried Dependent Child(ren) of the Insured who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on the Insured for support and maintenance.

The Company may require proof of the Dependent Child(ren)'s incapacity and dependency within 60 days before the Dependent Child(ren) reach the age limit specified above. The Company may request that satisfactory proof of the Dependent Child(ren)'s continued incapacity and dependency be submitted to the Company on an annual basis. If the requested proof is not furnished within 31 days of the request, such child(ren) shall no longer be considered Dependent Child(ren) as of the end of that 31 day period.

**Dispatch** means the period of time during which an Insured operates his or her vehicle, or performs vehicle repair, while being en route to pick up a load, picking up a load, en route to deliver a load, and/or delivering a load at its intended destination.

**Immediate Family Member** means a person who is related to the Insured in any of the following ways: Spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or placed for adoption, or stepchild).

**Functional Capacity Examination (FCE)** means a test performed by a physical therapy professional to evaluate and estimate physical limitations.

**Injury** means bodily Injury to an Insured caused by an Occupational accident while coverage is in force under this Policy, which results directly from and independently of all other causes in a Covered Loss. All Injuries sustained by an Insured in any one accident shall be considered a single Injury.

**Insured** means a person who: (1) is a member of an eligible class as described in the Description of Eligible Persons section of the Master Application; (2) has enrolled for coverage; and (3) has paid the required premium.

**Occupational** means, with respect to an activity, accident, incident, circumstance or condition involving an Insured, that the activity, accident, incident, circumstance or condition occurs or arises out of or in the course of the Insured performing services within the course and scope of contractual obligations for the Policyholder while under Dispatch. Occupational does not encompass any period of time during the course of everyday travel to and from work.

**Occupational Assessment** means a test of vocational capabilities. The process includes a review of medical records, Injury and treatment, history and background (education, military, previous

C22606DBG

occupation(s)), evaluation of basic skills such as reading, understanding, spelling and/or math capabilities, and vocational alternatives.

**Occupational Cumulative Trauma** means bodily Injury to an Insured caused by the combined effect of repetitive physical Occupational activities extending over a period of time, where: (1) such condition is diagnosed by a Physician; (2) the Insured's last day of last performance of the activities causing the Injury occurred during the Policy Period; and (3) such activities resulted directly and independently of all other causes in a Covered Loss.

**Occupational Disease** means a sickness which results in disability or death, and is caused by exposure to environmental or physical hazards during the course of the Insured's Occupational activities, where: (1) such condition is diagnosed by a Physician, and is generally accepted by the National Centers for Disease Control to be a disease caused by such hazards; (2) exposure to such hazards is not an accident but is caused or aggravated by the conditions under which the Insured performs Occupational services; (3) the Insured's last day of last exposure to the environmental or physical hazards causing such condition occurs during the Policy Period; and (4) such exposure results directly and independently of all other causes in a Covered Loss.

**Physician** means a practitioner of the healing arts acting within the scope of his or her license who is not: (1) the Insured; (2) an Immediate Family Member; or (3) a practitioner retained by the Policyholder.

**Pre-Existing Condition** means a condition for which an Insured has sought or received medical advice or treatment during the twelve months immediately preceding his or her effective date of coverage under this Policy.

**Schedule** means the Schedule shown in the Master Application for this Policy which is attached to and made a part of this Policy.

**Spouse** means the Insured's legal spouse.

**SECTION II**                          EFFECTIVE AND TERMINATION DATES

### Policy Effective and Termination Dates

**Policy Effective Date.** This Policy begins on the Policy Effective Date shown in the Master Application at 12:01 A.M. Standard Time at the address of the Policyholder where this Policy is delivered.

**Policy Termination Date.** This Policy may, at any time, be terminated by mutual written consent of the Company and the Policyholder. Otherwise, this Policy will terminate at 12:01 A.M. Standard Time at the Policyholder's address on the earliest of:
1. the Policy Termination Date shown in the Master Application, unless renewed;
2. the premium due date if premiums are not paid when due subject to the Grace Period;
3. the date specified in the written notice of the Company's intent to terminate this Policy, which will be at least 31 days after the date the Company sends such notice to the Policyholder's last known recorded address; or
4. the date specified in the written notice of the Policyholder's intent to terminate this Policy, which will be at least 31 days after the date the Policyholder sends such notice to the Company.

If the Company terminates this Policy, any unearned premium will be returned on a pro-rata basis. If the Policyholder requests termination, the Company will return any unearned premium paid on a short-rate basis. Termination will not affect any claim for a Covered Loss occurring prior to the effective date of termination.

### Insured's Effective and Termination Dates

**Insured's Effective Date.** An Insured's coverage under this Policy begins on the latest of:
1. the Policy Effective Date;
2. the date the person becomes a member of an eligible class of persons as described in the Description of Eligible Persons section of the Master Application;
3. if individual enrollment is required, the date written enrollment is received by the Policyholder; or
4. the date on which the first premium payment is paid when due.

**Insured's Termination Date.** An Insured's coverage under this Policy ends on the earliest of:
1. the date this Policy is terminated;
2. the premium due date if premiums are not paid when due;
3. the date the Insured requests, in writing, that his or her coverage be terminated; or
4. the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Description of Eligible Persons section of the Master Application.

A change in an Insured's coverage under this Policy due to a change in his or her eligible class or benefit selection becomes effective on the later of: (1) the date the change in his or her eligible class or benefit selection occurs; or (2) if the change requires a change in premium, the date the first changed premium is paid. However, a change in coverage applies only with respect to accidents that occur after the change becomes effective.

Termination of coverage will not affect a claim for a Covered Loss that occurs either before or after such termination if that loss results from an accident that occurred while the Insured's coverage was in force under this Policy.

**SECTION III**                                    **PREMIUM**

**Premiums.**  Premiums are payable to the Company at the rates and in the manner described in the Premiums section of the Master Application.  The Company may change the required premiums due on any Policy anniversary date, as measured annually from the Policy Effective Date, by giving the Policyholder at least 31 days advance written notice.  The Company may change the required premiums as a condition of any renewal of this Policy.  The Company may also change the required premiums at any time when any  change affecting premiums is made in this Policy.

**Insured's Premium.**  The Premium Rate for coverage under this Policy for each Insured is shown in the Schedule.

**Grace Period.**  A Grace Period of 31 days will be provided for the payment of any premium due after the first premium.  This Policy will not be terminated for nonpayment of premium during the Grace Period if the Policyholder pays all premiums due by the last day of the Grace Period.  This Policy will terminate on the last day of the period for which all premiums have been paid if all premiums due are not paid by the last day of the Grace Period.

If the Company expressly agrees to accept late payment of a premium without terminating this Policy, the Company does so in accordance with the Noncompliance With Policy Requirements provision in Section VIII of this Policy.  In such case, the Policyholder will be liable to the Company for any unpaid premiums for the time this Policy is in force, plus all costs and expenses (including, but not limited to, reasonable attorney fees, collection fees and court costs) incurred by the Company in the collection of all overdue amounts.

No Grace Period will be provided if the Company receives notice to terminate this Policy prior to a premium due date.

SECTION IV                                    BENEFITS

**Principal Sum.** As applicable to each Insured, Principal Sum means the amount of insurance in force under this Policy on the date of the accident, as described in the Schedule.

**Deductible.** The applicable per accident Deductible Amounts shown in the Schedule per Covered Loss apply to each Insured sustaining a particular type of Covered Loss. For accidents where more than one Covered Loss applies, the applicable per accident Deductible Amount shown in the Schedule per Covered Loss shall be applied separately to each benefit payable under this Policy.

## Accidental Death Benefit

If Injury to the Insured results in death within the Incurral Period shown in the Schedule, the Company will pay the Principal Sum, subject to any applicable Deductible Amount for the Accidental Death Covered Loss shown in the Schedule. The Incurral Period starts on the date of the accident that caused such Injury.

## Survivor's Benefit

If the Insured suffers accidental death such that an Accidental Death Benefit is payable under this Policy, the Company will pay a monthly Survivor's Benefit to the surviving Spouse, up to the Principal Sum shown in the Schedule. The Monthly Benefit Amount shall be determined by multiplying the Principal Sum by the Monthly Benefit Percentage.

If the Insured is not survived by a Spouse, or if the Insured's Spouse dies or remarries, the Company will pay or continue to pay the Survivor's Benefit to the Insured's surviving Dependent Children, if any. If there is more than one surviving Dependent Child, the Survivor's Benefit will be distributed equally among the surviving Dependent Children. The payment of the monthly Survivor's Benefit will end on the earliest of the following dates:
1.  the date the Spouse dies or remarries, if there are no Dependent Children;
2.  the date the last Dependent Child dies or is no longer eligible as defined in Section I of this Policy; or
3.  the date the Principal Sum has been paid.

If the Insured is not survived by a Spouse or any Dependent Children, the Company will pay only the Accidental Death Benefit in accordance with the Payment of Claims provision of this Policy.

## Exposure and Disappearance

If, by reason of an accident, an Insured is unavoidably exposed to the elements and as a result of such exposure suffers a loss which is otherwise covered under this Policy, the loss will be considered a Covered Loss under the terms of this Policy.

If the body of an Insured has not been found within one year after the disappearance, forced landing, stranding, sinking or wrecking of a conveyance in which that person was an occupant, then it will be deemed that the Insured has suffered accidental death, and the Accidental Death Benefit under this Policy, if any, will be payable subject to all other terms and provisions of this Policy.

## Accidental Dismemberment Benefit

If Injury to the Insured results in any one of the Losses specified below, within the Incurral Period shown in the Schedule (as measured from the date of the accident that caused such Injury), the Company will pay a monthly benefit equal to the Percentage of the Principal Sum shown below for that Loss, subject to any applicable Deductible Amount for the Accidental Dismemberment Covered Loss shown in the Schedule. Benefits will be payable in equal monthly payments up to the Maximum Benefit Period shown in the Schedule, subject to the Maximum Monthly Benefit Amount. The amount of the monthly benefit is



determined by multiplying the applicable Percentage of the Principal Sum by the Principal Sum, and then dividing that amount by the Maximum Benefit Period.  The payment of the monthly benefit ceases on the earlier of:  (1) the date the Insured dies; or (2) the date the total amount of monthly benefits paid equals the Percentage of the Principal Sum shown below for that Loss.

| For Loss of: | Percentage of the Principal Sum: |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Thumb and Index Finger of Same Hand | 25% |

"Loss" of a hand or foot means complete severance through or above the wrist or ankle joint.  "Loss" of sight of an eye means total and irrecoverable loss of the entire sight in that eye. "Loss" of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear."Loss" of speech means total and irrecoverable loss of the entire ability to speak.  "Loss" of an arm or leg means complete severance through or above the shoulder or hip joint.  "Loss" of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one Loss is sustained by an Insured as a result of the same accident, only one amount, the largest, will be paid.

## Paralysis Benefit

If Injury to the Insured results in any Type of Paralysis specified below, within the Incurral Period shown in the Schedule (as measured from the date of the accident that caused such Injury), the Company will pay the Percentage of the Principal Sum shown below for that Type of Paralysis, subject to any applicable Deductible Amount for the Paralysis Covered Loss shown in the Schedule.

| Type of Paralysis: | Percentage of the Principal Sum: |
|---|---|
| Quadriplegia | 100% |
| Paraplegia | 75% |
| Hemiplegia | 50% |

"Quadriplegia" means the complete and irreversible paralysis of both upper and both lower limbs. "Paraplegia" means the complete and irreversible paralysis of both lower limbs.  "Hemiplegia" means the complete and irreversible paralysis of the upper and lower limbs of the same side of the body.

If the Insured sustains more than one Type of Paralysis as a result of the same accident, only the largest single amount will be considered a Covered Loss.

## Temporary Total Disability Benefit

If Injury to the Insured results in Temporary Total Disability within the Commencement Period shown in the Schedule, and if the Insured is under age 70 on the day the Temporary Total Disability begins, the Company will pay the Temporary Total Disability Benefit specified below, subject to satisfaction of any



applicable Waiting Period shown in the Schedule. The Commencement Period starts on the date of the accident that caused such Injury. After the Waiting Period has been satisfied, the Temporary Total Disability Benefit shall be payable, retroactively, from the date the disability began, provided the Insured remains Temporarily Totally Disabled.

The Temporary Total Disability Benefit with respect to each week of an Insured's Temporary Total Disability during a Single Period of Total Disability is equal to the lesser of:

A.  the Participating Percentage (as shown in the Schedule) of the Insured's Average Weekly Earnings; or
B.  the Maximum Weekly Benefit Amount shown in the Schedule.

The Temporary Total Disability Benefit shall cease on the earliest of the following dates:
1.  the date the Insured is no longer Temporarily Totally Disabled;
2.  the date the Insured dies;
3.  the date the Insured attains age 75; or
4.  the date the Maximum Benefit Period shown in the Schedule has been reached.

The Temporary Total Disability Benefit with respect to less than a full Benefit Week of Temporary Total Disability equals 1/7th of the weekly Covered Loss for each day of Temporary Total Disability.

**Rehabilitation Disability Benefit.** If an otherwise Temporarily Totally Disabled Insured returns to work for the Policyholder while in Rehabilitative Status, he or she will be deemed Temporarily Totally Disabled, and this Policy will continue to provide coverage for his or her Temporary Total Disability.

Benefits will be payable only to the extent that the Insured's total income during Rehabilitative Status does not exceed 100% of his or her Average Weekly Earnings, subject to the Maximum Weekly Benefit Amount shown in the Schedule.

Subject to the Temporary Total Disability Maximum Benefit Period shown in the Schedule, this benefit: (1) will be payable for an initial three month period while Rehabilitative Status continues; and (2) may be extended by his/her Physician for additional three-month periods, up to a maximum of 12 months in any one period of Disability.

As used above in this Temporary Total Disability benefit:

**Average Weekly Earnings** means the Insured's average weekly compensation earned for performing Occupational services. If the Insured is paid wholly or in part by commissions, Average Weekly Earnings also include commissions based on an average of the commissions paid to the Insured for performing Occupational services during the 104 weeks immediately preceding the onset of Temporary Total Disability. If the Insured was not performing such services for the Policyholder during the entire 104 week period, commissions are based on an average of the total number of weeks the Insured was performing such services for the Policyholder.

**Benefit Week** means a 7-day period of time that begins on the first day of Temporary Total Disability after the Waiting Period shown in the Schedule for Temporary Total Disability and on the same day of each week thereafter.

**Continuous Care** means weekly, monthly, bi-monthly or quarterly monitoring and/or evaluation of the disabling condition by a Physician. The Company must receive proof of continuing Temporary Total Disability on a weekly, monthly, bi-monthly or quarterly basis.

**Maximum Benefit Period** means, with respect to Temporary Total Disability, the maximum period for which benefits shall be payable for a Temporary Total Disability Covered Loss during a Single Period of Total Disability. The length of the Maximum Benefit Period for Temporary Total Disability is shown in the Schedule.

**Rehabilitative Status**  means the Occupational status of an otherwise Temporarily Totally Disabled Insured who returns to work for the Policyholder working not less than 25% of his or her regular work week, provided the Insured:  (1) continues to receive Continuous Care; and (2) obtains written approval of his/her Physician to return to work.

**Single Period of Total Disability** means all periods of Temporary Total Disability due to the same or related causes (whether or not insurance has been interrupted) except any of the following which are considered separate periods of disability:  (1) successive periods of Temporary Total Disability, due to entirely different and unrelated causes, separated by at least one full day during which the Insured is not Temporarily Totally Disabled; (2) successive periods of Temporary Total Disability, due to the same or related causes, separated by at least 6 months during which the Insured is not Temporarily Totally Disabled.  If an Insured is unable to perform Occupational Services on a full or part-time basis, he or she may return to Temporary Total Disability status if (1) the Insured has not been back to work for more than two consecutive weeks; and (2) the Insured is again Temporarily Totally Disabed due to the same Injury which caused the original Temporary Total Disability.

**Temporary Total Disability,** Temporarily Totally Disabled means disability that:  (1) prevents an Insured from performing the duties of his or her regular, primary occupation; and (2) requires that, and results in, the Insured receiving Continuous Care.

## Continuous Total Disability Benefit

If Injury to the Insured, resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, the Company will pay the Continuous Total Disability Benefit specified below, provided:

1. benefits payable for a Temporary Total Disability Covered Loss ceased solely because the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, but the Insured remains disabled;
2. the Insured is under age 75 on the day after the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached;
3. the Insured has been granted a Social Security Disability Award for their disability; and
4. their disability is reasonably expected to continue without interruption until the Insured dies.

The Continuous Total Disability Benefit with respect to each month of an Insured's Continuous Total Disability is equal to four and three-tenths (4.3) times the weekly benefit for Temporary Total Disability, less the Insured's primary Social Security Disability Award.

The Continuous Total Disability Benefit with respect to less than a full Benefit Week of Continuous Total Disability equals 1/7th of the weekly Benefit for Temporary Total Disability for each day of Continuous Total Disability.

Benefits payable under the Temporary Total Disability Benefit before the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, will not be considered a Continuous Total Disability Benefit.

The Continuous Total Disability benefit shall cease on the earliest of the following dates:

1. the date the Insured is no longer Continuously Totally Disabled.
2. the date the Insured dies.
3. the date the Insured's Social Security Disability Award ceases.
4. the date the Insured attains age 75
5. the date the Maximum Benefit Period shown in the Schedule for Continuous Total Disability has been reached.

As used above in this Continuous Total Disability benefit:



**Benefit Week** means a one-week period of time that begins on the day after the Maximum Benefit Period for Temporary Total Disability has been reached and on the same day of each week thereafter.

**Continuous Care** means at least bi-monthly monitoring and/or evaluation of the disabling condition by a Physician. The Company must receive proof of ongoing Continuous Total Disability on a bi-monthly basis.

**Continuous Total Disability, Continuously Totally Disabled** means disability that: (1) prevents an Insured from performing the duties of any occupation for which he or she is qualified by reason of education, training or experience, and (2) requires that, and results in, the Insured receiving Continuous Care.

**Maximum Benefit Period** means, with respect to Continuous Total Disability, the maximum period for which benefits shall be payable for a Continuous Total Disability Covered Loss(es). The length of the Maximum Benefit Period for Continuous Total Disability is shown in the Schedule.

Terms used in this Continuous Total Disability benefit, but which refer to Temporary Total Disability and are defined in the Temporary Total Disability benefit, are to be interpreted as defined in that benefit.

**Accident Medical Expense Benefit**

If an Insured suffers an Injury that requires him or her to be treated by a Physician, within the Commencement Period shown in the Schedule, the Company will pay the Usual and Customary Charges incurred for Medically Necessary Covered Accident Medical Services received due to that Injury, up to the Maximum Benefit Amount and Maximum Benefit Period shown in the Schedule per Insured for all Injuries caused by a single accident, subject to any applicable Deductible Amount. The Commencement Period starts on the date of the accident that caused such Injury. The Deductible Amount for the Accident Medical Expense Benefit is the Deductible Amount shown in the Schedule, if any, which must be met from Usual and Customary Charges for Medically Necessary Covered Accident Medical Services incurred due to Injuries sustained by the Insured in that accident.

As used in this Accident Medical Expense Benefit provision:

**Ambulatory Medical Center** means a licensed public establishment with an organized staff of Physicians and permanent facilities that are equipped and operated primarily for the purpose of providing medical services or performing surgical procedures. Such establishment must provide continuous Physician and registered nursing (RN) services whenever a patient is in the facility. An Ambulatory Medical Center does not include a Hospital, a Physician's office, or a clinic.



**Covered Accident Medical Service(s)** means any of the following services:

1. Hospital semi-private room and board (or room and board in an intensive care unit); Hospital ancillary services (including, but not limited to, use of the operating room or emergency room); or use of an Ambulatory Medical Center.
2. services of a Physician or a registered nurse (RN);
3. ambulance service to or from a Hospital
4. laboratory tests;
5. radiological procedures;
6. anesthetics and the administration of anesthetics;
7. blood, blood products and artificial blood products, and the transfusion thereof;
8. physical therapy, Occupational therapy, and chiropractic care, up to the Physical Therapy, Occupational Therapy and Chiropractic Care Maximum, if any, shown in the Schedule;
9. rental of Durable Medical Equipment, up to the actual purchase price of such equipment;
10. artificial limbs, artificial eyes or other prosthetic appliances;
11. medicines or drugs administered by a Physician or that can be obtained only with a Physician's written prescription; or
12. repair or replacement of Sound Natural Teeth damaged or lost as a result of Injury, up to the Dental Maximum, if any, shown in the Schedule.

**Custodial Services** means any services which are not intended primarily to treat a specific Injury. Custodial Services include, but shall not be limited to services: (1) related to watching or protecting the Insured; (2) related to performing or assisting the Insured in performing any activities of daily living, such as: (a) walking; (b) grooming; (c) bathing; (d) dressing; (e) getting in or out of bed; (f) toileting; (g) eating; (h) preparing foods; or (i) taking medications that can usually be self-administered; and (3) that are not required to be performed by trained or skilled medical or paramedical personnel.

**Durable Medical Equipment** refers to equipment of a type that is designed primarily for use, and used primarily, by people who are injured (for example, a wheelchair or a hospital bed). It does not include items commonly used by people who are not injured, even if the items can be used in the treatment of injury or can be used for rehabilitation or improvement of health (for example, a stationary bicycle or a spa).

**Hospital** means a facility that: (1) is operated according to law for the care and treatment of injured people; (2) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (3) has 24-hour nursing service by registered nurses (RN), on duty or on call; and (4) is supervised by one or more Physicians. A Hospital does not include: (1) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care; (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward, room, wing or other section of the hospital that is used for such purposes; or (3) any military or veterans hospital or soldiers home or any hospital contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Maximum Benefit Period** means with respect to Accident Medical Expense, the maximum period for which benefits shall be payable for Covered Accident Medical Services for or in connection with a single Accident Medical Expense Covered Loss. The length of the Maximum Benefit Period for Accident Medical Expense is shown in the Schedule.

**Medically Necessary** means that a Covered Accident Medical Service: (1) is essential for diagnosis, treatment or care of the Occupational Injury for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a Physician and performed under his or her care, supervision or order.

**Personal Comfort or Convenience Item(s)** means those items that are not Medically Necessary for the care and treatment of the Insured's Occupational Injury. The term Personal Comfort or Convenience



Item(s) includes, but is not limited to:  (1) a private Hospital room, unless Medically Necessary; (2) television rental; and (3) Hospital telephone charges.

**Sound Natural Teeth** means natural teeth that either are unaltered or are fully restored to their normal function and are disease free, have no decay, and are not more susceptible to injury than unaltered natural teeth.

**Usual and Customary Charge(s)** means a charge that:  (1) is made for a Covered Accident Medical Service; (2) does not exceed the usual level of charges for similar treatment, services or supplies in the locality where the expense is incurred (for a Hospital room and board charge, other than for a Medically Necessary stay in an intensive care unit, does not exceed the Hospital's most common charge for semi-private room and board); and (3) does not include charges that would not have been made if no insurance existed.

In addition to the Exclusions in Section VI of this Policy, Usual and Customary Charges for Covered Accident Medical Services do not exist, and benefits are not payable with respect to, any expense for or resulting from:
1.  repair or replacement of existing artificial limbs, artificial eyes or other prosthetic appliances or repair of existing Durable Medical Equipment unless for the purpose of modifying the item because Injury has caused further impairment in the underlying bodily condition;
2.  new, or repair or replacement of dentures, bridges, dental implants, dental bands or braces or other dental appliances, crowns, caps, inlays or onlays, fillings or any other treatment of the teeth or gums;
3.  new eye glasses or contact lenses or eye examinations related to the correction of vision or related to the fitting of glasses or contact lenses, unless Injury has caused impairment of sight; or repair or replacement of existing eyeglasses or contact lenses unless for the purpose of modifying the item because Injury has caused further impairment of sight;
4.  new hearing aids or hearing examinations unless Injury has caused impairment of hearing; or repair or replacement of existing hearing aids unless for the purpose of modifying the item because Injury has caused further impairment of hearing;
5.  rental of Durable Medical Equipment where the total rental expense exceeds the usual purchase expense for similar equipment in the locality where the expense is incurred (but if, in the Company's sole judgment, Accident Medical Expense Benefits for rental of Durable Medical Equipment are expected to exceed the usual purchase expense for similar equipment in the locality where the expense is incurred, the Company may, but is not required to, choose to consider such purchase expense as a Usual and Customary Covered Accident Medical Expense Benefit in lieu of such rental expense);
6.  Custodial Services; or
7.  Personal Comfort or Convenience Items, such as but not limited to, Hospital telephone charges, television rental or guest meals.




**SECTION V**                                    LIMITS OF LIABILITY

**Per-Insured Limit of Liability.** The Per-Insured Limit of Liability (Combined Single Limit) stated in the Schedule will be the total limit of the Company's liability for all benefits payable under this Policy with respect to any one Insured arising out of injury sustained by such individual as the result of any one accident.

**Aggregate Limit of Liability.** The Aggregate Limit of Liability stated in the Schedule will be the total limit of the Company's liability for all benefits payable under this Policy with respect to all Insureds arising out of injury sustained by one or more Insured(s) as the result of any one accident.

If the total of such benefits exceeds the Aggregate Limit of Liability, the Company shall not be liable to any Insured for a greater proportion of such Insured's benefits than said Aggregate Limit of Liability bears to the total benefits afforded all such insureds under this Policy.

**SECTION VI**                                    EXCLUSIONS

This Policy does not cover any losses caused in whole or in part by, or resulting in whole or in part from, the following:

1.  suicide or any attempt at suicide; intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury;
2.  sickness, disease or infections of any kind, except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning;
3.  any Pre-Existing Condition, until the Insured has been continuously covered under this Policy for twelve consecutive months;
4.  Occupational Cumulative Trauma, unless (and to the extent as) specifically provided by this Policy;
5.  Occupational Disease, unless (and to the extent as) specifically provided by this Policy;
6.  hernia of any kind, unless (and to the extent as) specifically provided by this Policy;
7.  hemorrhoids of any kind, unless (and to the extent as) specifically provided by this Policy;
8.  performing, learning to perform or instructing others to perform as a master or crew member of any vessel while covered under the Jones Act or the United States Longshore and Harbor Workers' Act, or similar coverage;
9.  declared or undeclared war, or any act of declared or undeclared war;
10. full-time active duty in the armed forces of any country or international authority, except the National Guard or organized reserve corps duty;
11. any Injury for which the Insured is entitled to benefits pursuant to any workers' compensation law or other similar legislation;
12. any loss insured by employer's liability or any other liability insurance;
13. accidents occurring while the Insured is working for or under contract with an entity other than the Policyholder;
14. the Insured being under the influence of drugs or intoxicants, unless taken under the advice of his or her Physician;
15. the Insured's commission of or attempt to commit a felony;
16. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the Insured is:
    a.  riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or
    b.  performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or
    c.  riding as a passenger in an aircraft owned, leased or operated by the Policyholder; or
17. any union "stop work" action



**SECTION VII**                          CLAIMS PROVISIONS

**Notice of Claim.** Written notice of claim must be given to the Company within 20 days after an Insured's loss, or as soon thereafter as reasonably possible.  Notice given by or on behalf of the claimant to the Company at of the Administrator shown in the Schedule,  with information sufficient to identify the Insured, is deemed notice to the Company.

**Claim Forms.** The Company will send claim forms to the claimant upon receipt of a written notice of claim.  If such forms are not sent within 15 days after the giving of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed in this Policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.  The notice should include the Insured's name, the Policyholder's name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to the Company within 90 days after the date of the loss.  If the loss is one for which this Policy requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the Company may reasonably require.  Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of an Insured will be made to the Insured's beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.  Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the Insured suffering the loss.  If an Insured dies before all payments that have been made, the amount still payable will be paid to his or her beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property.  If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the Company's option, to any relative by blood or connection by marriage of the payee, who, in the Company's opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

The Company may pay benefits directly to any Hospital or person rendering covered services, unless the Insured requests otherwise in writing.  Such request must be made no later than the time proof of loss is filed.  Any payment the Company makes in good faith fully discharges the Company's liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable under this Policy for any loss other than loss for which this Policy provides any periodic payment will be paid immediately upon the Company's receipt of due written proof of the loss.  Subject to the Company's receipt of due written proof of loss, all accrued benefits for loss for which this Policy provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the Company is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

**Commutation of Losses.** It is agreed that, at the Company's option, at any time later than two years from the date of any accident resulting in a claim under this Policy, the Company may advise the Insured of its desire to be released from liability with respect to any such claim.  In that event, the Company will appoint an actuary or appraiser to investigate, determine and capitalize such claim, and the payment by the Company of the capitalized value of such claim will constitute a complete and final release of the Company with respect to such claim.

**Sunset.** No claim made for losses sustained by Insureds will be considered valid and collectible in accordance with this Policy unless full details of such claim are presented to the Company within three years from the date of the accident which is the basis of such claim.

## SECTION VIII                    GENERAL PROVISIONS

**Entire Contract; Changes.** This Policy, together with any riders, endorsements, amendments, applications, enrollment forms, and attached papers, if any, make up the entire contract between the Policyholder and the Company. In the absence of fraud, all statements made by the Policyholder or any Insured will be considered representations and not warranties. No written statement made by an Insured will be used in any contest unless a copy of the statement is furnished to the Insured or his or her beneficiary or personal representative.

No change in this Policy will be valid until approved by an officer of the Company. The approval must be noted on or attached to this Policy. No agent may change this Policy or waive any of its provisions.

**Incontestability.** The validity of this Policy will not be contested after it has been in force for two year(s) from the Policy Effective Date, except as to nonpayment of premiums.

After an Insured has been insured under this Policy for two year(s) during his lifetime, no statement made by the Insured, except a fraudulent one, will be used to contest a claim under this Policy. The Company may only contest coverage if the misstatement is made in a written instrument signed by the Insured and a copy is given to the Policyholder, the Insured or the beneficiary.

**Beneficiary Designation and Change.** The Insured's designated beneficiary(ies) is (are) the person(s) so named by the Insured as shown on the Policyholder's records kept on this Policy.

A legally competent Insured over the age of majority may change his or her beneficiary designation at any time, unless an irrevocable designation has been made. The change may be executed, without the consent of the designated beneficiary(ies), by providing the Company or, if agreed upon in advance by the Company, the Policyholder with a written request for change. When the request is received by the Company or, if agreed upon in advance by the Company, the Policyholder, whether the Insured is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to the Company on account of any payment which is made prior to receipt of the request.

Except with regard to the Survivors Benefit described in Section IV of this Policy, if applicable, in the event that there is no designated beneficiary, or if no designated beneficiary is living after the Insured's death, the benefits will be paid, in equal shares, to the survivors in the first surviving class of those that follow:  The Insured's: (1) Spouse; (2) children; (3) parents; or (4) brothers and sisters.  If no class has a survivor, the beneficiary is the Insured's estate.

**Physical Examination and Autopsy.** The Company has the right, at its own expense, to examine the person of any Insured whose injury is the basis of a claim, when and as often as it may be reasonably required during the pendency of the claim. In the case of a disability claim, the Company also has the right to require the Insured, at the Company's expense, to submit to an Occupational Assessment and/or a Functional Capacity Examination. The Company may also require an autopsy where it is not prohibited by law.

**Legal Actions.** No legal action for a claim can be brought against the Company until 60 days after receipt of proof of loss. No legal action for a claim can be brought against the Company more than three years after the time for giving proof of loss.

**Noncompliance With Policy Requirements.** Any express waiver by the Company of any requirements of this Policy will not constitute a continuing waiver of such requirements. Any failure by the Company to

insist upon compliance with any such provision will not operate as a waiver or amendment of that provision.

**Conformity With State Statutes.** Any provision of this Policy which, on its effective date, is in conflict with the statutes of the state in which the Policy was delivered, is hereby amended to conform to the minimum requirements of such state.

**Clerical Error.** Clerical error, whether by the Policyholder, the Administrator, or the Company in keeping records pertaining to this Policy will not: (1) invalidate coverage otherwise validly in force, or (2) continue coverage otherwise validly terminated.

**Data Required.** The Policyholder and the Administrator must maintain adequate records acceptable to the Company and provide any information required by the Company relating to this insurance.

**Audit.** The Company will have the right to inspect and audit, at any reasonable time, all records and procedures of the Policyholder and the Administrator that may have a bearing on this insurance.

**Assignment.** This Policy is not assignable.

**Subrogation.** To the total extent the Company pays for losses incurred, the Company may assume the rights and remedies of the Insured relating to such loss. The Insured agrees to assist the Company in preserving its rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by the Company.

**Right to Recover Overpayment.** In addition to any rights of recovery, reimbursement or subrogation provided to the Company herein, when payments have been made by the Company with respect to a Covered Loss in an amount in excess of the maximum amount of payment necessary to satisfy an obligation under the terms of this Policy, the Company shall have the right to recover such excess payment, from any one or more of the following: Any person to whom such payments were made (*i.e.* medical providers, etc.), the Insured, an insurance company, or any other organization(s) which received, or should have received, the payment.

**Conditional Claim Payment.** If an Insured suffers a Covered Loss(es) as the result of Injuries for which, in the opinion of the Company, a third party may be liable, the Company will pay the amount of benefits otherwise payable under this Policy. However, if the Insured receives payment from the third party, the Insured agrees to refund to the Company the lesser of: (1) the amount actually paid by the Company for such Covered Loss(es); or (2) an amount equal to the sum actually received from the third party for such Covered Loss(es). If the Insured does not receive payment from the third party for such Covered Loss(es), the Company reserves the right to subrogate under the Subrogation clause of this Policy.

At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgement, arbitration or otherwise. This provision shall not apply where prohibited by law.

**Offset.** The Company will have, and may exercise at any time, the right to offset any balance or balances, whether on account of premiums or otherwise, due from the Policyholder to the Company against any balance or balances whether on account of losses or otherwise, due from the Company to the Policyholder.

**Other Insurance.** If the Insured incurs losses for which benefits are payable under more than one like policy issued by the Company or one of its affiliates the coverage under this Policy is in excess of such other insurance, and will not contribute to such a loss with such other insurance. This condition does not apply to: (1) the Accident Medical Expense benefit described in Section IV of this Policy; or (2) other insurance which the Insured has provided to apply in excess of the coverage under this Policy.

**Plan and Exposure Changes.** The Policyholder must notify the Company of any subsidiary or affiliated company that is to be covered under this Policy. Such notice must be sent within 30 days of the acquisition of such subsidiary or affiliated company. If such notice is not provided, the newly acquired

entity will not be considered a part of the Policyholder or a covered affiliate or subsidiary, and the Insureds from the newly acquired entity will not be considered as insureds of the Policyholder or a covered affiliate or subsidiary for Policy purposes until the date that notice is provided. The Company has the right to adjust premium based on the changing exposure.

**Non-Duplication of Workers' Compensation Benefits.** No benefits shall be payable under this Policy for any loss for which the Insured claims coverage under any workers' compensation, employers' liability, occupational disease or similar law. The Company reserves the right to recover, from the Insured, any benefits paid under this Policy which are subsequently claimed under any workers' compensation, employers' liability, occupational disease or similar law.



**AMERICAN INTERNATIONAL COMPANIES®**

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder: Chase Bank USA, N.A., as Trustee
Policy Number: OCC 0009100....A
Participating Organization: Express Courier International, Inc.

## PARTICIPATING ORGANIZATION ENDORSEMENT

This Endorsement is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Endorsement.

The following definition is added to the Definitions section of the Policy:

**Participating Organization** means an organization: (1) which elects to offer coverage under this Policy by completing a Participating Organization Application that has been accepted by the Company; (2) which completes a participation agreement with the Policyholder; (3) which remits the required premium when due; and (4) while coverage through the Participating Organization is available under this Policy.

The following provisions are added to the Effective and Termination Dates section of the Policy:

**Participating Organization Effective Date** A Participating Organization's coverage under this Policy begins on the later of: (1) the Participating Organization Effective Date shown in the Participating Organization Application at 12:01 A.M. Standard Time at the address of the Participating Organization shown in the Participating Organization Application; or (2) the Policy Effective Date shown in the Master Application.

**Participating Organization Termination Date.** The Participating Organization's coverage under this Policy may, at any time, be terminated by mutual written consent of the Company and the Participating Organization. Otherwise, the Participating Organization's coverage under this Policy will terminate at 12:01 A.M. Standard Time at the Participating Organization's address on:

1. the Participating Organization Termination Date shown in the Participating Organization Application, unless renewed;
2. the date required premiums are not paid when due, subject to the Grace Period;
3. the date specified in the written notice of the Company's intent to terminate the Participating Organization's coverage under the Policy, which will be at least 31 days after the date the Company sends such notice to the Participating Organization's last known recorded address;
4. the date specified in the written notice of the Participating Organization's intent to terminate coverage under this Policy, which will be at least 31 days[1] after the date the Participating Organization sends such notice; or
5. the date the Policy terminates.

If the Company terminates this Policy, any unearned premium will be returned on a pro-rata basis. If the Participating Organization requests termination, the Company will return any unearned premium paid on a short-rate basis. Termination will not affect any claim for loss occurring prior to the effective date of termination.

C22624DBG

The references in the Policy to "this Policy/coverage under this Policy", "Master Application" and "Policyholder" may also, where applicable mean "a Participating Organization's coverage under this Policy", "Participating Organization's Application" and "Participating Organization", respectively.

The following language applies to each Rider attached to the Policy:

Any Riders attached to this Policy apply only with respect to accidents that occur on or after the later of: (1) the effective date of each Rider or (2) the effective date of the Participating Organization's coverage under each Rider. Each Rider applies with respect to a Participating Organization's coverage under this Policy only if the Participating Organization has elected the coverage described in each Rider as indicated in the Participating Organization Application.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Endorsement:

Pres. ___                                     Elizabeth M. Tuck

President                                     Secretary

C32634R06

**AIG** AMERICAN INTERNATIONAL COMPANIES®

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder: Chase Bank USA, N.A., as Trustee
Policy Number: OCC 0009100676-A
Participating Organization: Express Courier International, Inc.

## HEMORRHOIDS COVERAGE RIDER

This Rider is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application. It applies only with respect to Hernia provided such Injury is sustained on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Hemorrhoids Coverage.** Exclusion 7 in Section VI of the Policy is hereby waived with respect to the following benefit(s): Temporary Total Disability Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hemorrhoids. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured's Hemorrhoids, provided such Hemorrhoids are surgically repaired while the Insured's coverage is in force under this Policy, subject to the following:

1.  With respect to the Temporary Total Disability Benefit the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hemorrhoids Lifetime Maximum Benefit Period shown in the Schedule.

2.  With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured Person's Hemorrhoids, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hemorrhoids Lifetime Maximum Benefit Amount shown in the Schedule.

**Hemorrhoids -** as used in this Rider, means a mass of dilated veins in swollen tissue at the margin of the anus or nearby within the rectum.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                                    Secretary

C22615DBG

**AIG** AMERICAN INTERNATIONAL COMPANIES®

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder: Chase Bank USA, N.A., as Trustee
Policy Number: OCC 0009100676-A
Participating Organization: Express Courier International, Inc.

## HERNIA COVERAGE RIDER

This Rider is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application. It applies only with respect to Hernia provided such Injury is sustained on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Hernia Coverage.** Exclusion 6 in Section VI of the Policy is hereby waived with respect to the following benefit(s): Temporary Total Disability and Accident Medical Expense.

Any reference to an injury or accident as defined in the policy is hereby deemed to include Hernia. Benefits shall be payable for a Covered Loss caused in whole or in part by, contributed to in whole or in part by, or resulting in whole or in part from, the Insured's Hernia, provided such Hernia is surgically repaired while the Insured's coverage is in force under this Policy, subject to the following:

1. With respect to the Temporary Total Disability Benefit, the period for which such indemnity shall be payable for all periods of disability, subject to the Temporary Total Disability Benefit Waiting Period, shall not exceed the Hernia Lifetime Maximum Benefit Period shown in the Schedule.

2. With respect to the Accident Medical Expense Benefit, benefits payable for or in connection with the Insured's Hernia, subject to the Accident Medical Expense Deductible Amount, if any, shall not exceed the Hernia Lifetime Maximum Benefit Amount shown in the Schedule.

**Hernia** - as used in this Rider, means a protrusion of an organ or part through connective tissue or through a wall of the cavity in which it is normally enclosed. Hernia does not include diaphragmatic (hiatal) hernia.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                                    Secretary

C22615DBG



**AIG** AMERICAN INTERNATIONAL COMPANIES®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

Policyholder: Chase Bank USA, N.A., as Trustee
Policy Number: OCC 0009100676-A
Participating Organization: Express Courier International, Inc.

### NON-OCCUPATIONAL COVERAGE RIDER

This Rider is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master Application. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

**Non-Occupational Coverage.** References in the Policy to an Injury or accident, where applicable, are hereby deemed to include Non-Occupational Injury and Non-Occupational accident, respectively.

Benefits shall be payable for only those Covered Losses listed in the Schedule under Non-Occupational Accident Benefits, and shall be subject to the Non-Occupational Accident Benefit limitations shown therein.

**Non-Occupational** - as used in this Rider, means, with respect to an activity, accident, incident, circumstance or condition involving an Insured, that it does not occur or arise out of or in the course of the Insured performing Occupational services.

**Non-Occupational Injury** - as used in this Rider, means, bodily Injury caused by a Non-Occupational accident occurring while this Policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a Covered Loss.

All Injuries sustained by an Insured in any one accident shall be considered a single Injury.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Rider.

President                                      Secretary

C22617DPG



**AIG** AIG Domestic Accident & Health Division

A Division of American International Companies[*]

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270

(212) 770-7000

(a capital stock company, herein referred to as the Company)

### MASTER APPLICATION FOR
### INDEPENDENT CONTRACTOR COURIER
### OCCUPATIONAL ACCIDENT INSURANCE

Application is hereby made for a plan of accident insurance based on the statements and representations included in the Participating Organization Applications:

### SCHEDULE

1.  Name of Policyholder:  Chase Bank USA, N.A. as Trustee
    Address: 500 Stanton Christiana Road, Floor 3/OP 4,  Newark,  DE  19713
    Type of Business or Organization:  Bank
    Policy Number:  OCC 0009100676-A


    Identification of Participating Organization:

    Name of Participating Organization:  Express Courier International, Inc.
    Address of Participating Organization:  238 Bedford Way,  Franklin, TN  37064
    Type of Business or Purpose of Organization:  Independent Contractor Couriers
    Covered Affiliates(s) or Subsidiary(ies):  None


2.  Description of Eligible Persons/Premium Rates:

    | Class | Description of Class |
    |---|---|
    | I | All active full-time independent contractor/contractee couriers of Express Courier International, Inc. under age 75, earning an average of $250.00 or more per week, contracted with the Participating Organization under a long-term lease agreement of 30 days or more and for whom the required premium has been paid and a completed enrollment form has been signed.. |
    | II | All active part-time independent contractor/contractee couriers of Express Courier International, Inc. under age 75, earning an average of $250.00 or less per week, contracted with the Participating Organization under a long-term lease agreement of 30 days or more and for whom the required premium has been paid and a completed enrollment form has been signed. |

    Premium Rates:

    Class  I -      $92.00 per Insured per month
    Class  II -     $61.00 per Insured per month

EXHIBIT

2



Applicable to Class I

3.   Benefits ("X" indicates coverage is applicable; "NIL" indicates coverage does not apply):

   A.   Occupational Accident Benefits:

     (1)  _X_  Accidental Death Benefit:
         Principal Sum .................................................................$50,000.
         Incurral Period ............................................................... 365 days

     (2)  _X_  Survivor's Benefit:
         Principal Sum .............................................................$200,000.
         Monthly Benefit Percentage ...............................................1%
         Monthly Benefit Amount ..................................................$2,000.

     (3)  _X_  Accidental Dismemberment Benefit:
         Principal Sum .............................................................$250,000.
         Incurral Period ............................................................... 365 days

     (4)  _X_  Paralysis Benefit:
         Principal Sum .............................................................$250,000.
         Incurral Period ............................................................... 365 days

     (5)  _X_  Temporary Total Disability Benefit:
         Commencement Period (Initial Disability) ......................... 90 days
         Waiting Period................................................................. 7 days
         Participation Percentage ...............................................66 2/3%
         Maximum Weekly Benefit Amount ....................................$500
         Maximum Benefit Period.................................................104 weeks

     (6)  _X_  Continuous Total Disability Benefit (not a Covered Loss until the day after the
         Temporary Total Disability Maximum Benefit Period has been reached):
         Participation Percentage ...............................................66 2/3%
         Maximum Weekly Benefit Amount ....................................$500.
         Maximum Benefit Period................................................. to age 75

     (7)  _X_  Accident Medical Expense Benefit (Primary):
         Commencement Period ................................................. 90 days
         Deductible Amount ..........................................................$100
         Maximum Benefit Period.................................................104 weeks
         Dental Maximum .........................$250. per tooth, not to exceed $2,500 per accident.
         Maximum Benefit Amount ............................................$1,000,000.

     (8)  _X_  Hemorrhoids Coverage
         Lifetime Maximum Benefit Amount...................................$5,000.

     (9)  _X_  Hernia Coverage
         Lifetime Maximum Benefit Amount...................................$5,000.

Applicable to Class II

A.  Occupational Accident Benefits:

(1)  X  Accidental Death Benefit:
      Principal Sum ........................................................................$50,000.
      Incurral Period ...................................................................... 365 days

(2)  X  Survivor's Benefit:
      Principal Sum ........................................................................$200,000.
      Monthly Benefit Percentage ....................................................1%
      Monthly Benefit Amount ..........................................................$2,000.

(3)  X  Accidental Dismemberment Benefit:
      Principal Sum ........................................................................$250,000.
      Incurral Period ...................................................................... 365 days

(4)  X  Paralysis Benefit:
      Principal Sum ........................................................................$250,000.
      Incurral Period ...................................................................... 365 days

(5)  X  Temporary Total Disability Benefit:
      Commencement Period (Initial Disability) ................................ 90 days
      Waiting Period......................................................................... 7 days
      Participation Percentage .........................................................66 2/3%
      Maximum Weekly Benefit Amount ...........................................$250
      Maximum Benefit Period ..........................................................104 weeks

(6)  X  Continuous Total Disability Benefit (not a Covered Loss until the day after the
      Temporary Total Disability Maximum Benefit Period has been reached):
      Participation Percentage ..........................................................66 2/3%
      Maximum Weekly Benefit Amount .............................................$250.
      Maximum Benefit Period ....................................................... to age 75

(7)  X  Accident Medical Expense Benefit (Primary):
      Commencement Period ............................................................ 90 days
      Deductible Amount...................................................................$100
      Maximum Benefit Period ..........................................................104 weeks
      Dental Maximum ........................$250. per tooth, not to exceed $2,500 per accident.
      Maximum Benefit Amount .........................................................$1,000,000.

(8)  X  Hemorrhoids Coverage
      Lifetime Maximum Benefit Amount...........................................$5,000.

(9)  X  Hernia Coverage
      Lifetime Maximum Benefit Amount...........................................$5,000.

Applicable to Class(es) I & II

B.  Non-Occupational

(1)  X  Accidental Death Benefit:
      Principal Sum ........................................................................$10,000.
      Incurral Period ...................................................................... 365 days

(2)  X  Accidental Dismemberment Benefit:
      Principal Sum ........................................................................$10,000.
      Incurral Period .......................................................................365 days

(3)  X  Accident Medical Expense Benefit (Primary):
      Commencement Period ............................................................ 90 days

C22607DBG

Deductible Amount.................................................................................................$100.
Maximum Benefit Period...........................................................................................52 weeks
Dental Maximum ........................... $250. per tooth, not to exceed $1,000 per accident.
Maximum Benefit Amount.......................................................................................$5,000

4.  Limits of Liability:

    A.  Occupational Coverage:
        Per-Insured Person Limit of Liability (Combined Single Limit)....................................$1,000,000.
        (all Covered Losses with respect to
        any one Occupational accident)

        Aggregate Limit of Liability..............................................................................$2,000,000.
        (all Covered Losses with respect to all Insured
        Persons in any one Occupational accident)

    B.  Non-Occupational Coverage
        Per-Insured Person Limit of Liability (Combined Single Limit)........................................$10,000.
        (all Covered Losses with respect to
        any one accident)

        Aggregate Limit of Liability..............................................................................$20,000.
        (all Covered Losses with respect to all Insured
        Persons in any one accident)

5.  Policy Riders and/or Endorsements:

    The following Riders and/or Endorsements are attached to and made part of the Policy as of the Policy Effective
    Date. Each Rider and/or Endorsement is subject to all provisions, limitations and exclusions of the Policy that are not
    specifically modified by the Rider and/or Endorsement.

    | FORM NO. | DESCRIPTION |
    |---|---|
    | C22614DBG | Hemorrhoids Coverage Rider |
    | C22615DBG | Hernia Coverage Rider |
    | C22617DBG | Non-Occupational Coverage Rider |
    | C22624DBG | Participating Organizational Endorsement |

6.  Policy Effective Date:     July 1, 2006

7.  Policy Termination Date:  September 1, 2007

_____

Signed for the Policyholder

_____

Title

_____

Date

Signed by Licensed Resident Agent (Where Required by Law)

C22607DBG                                   4



# AIG  AMERICAN INTERNATIONAL COMPANIES®

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270
(212) 770-7000
(a capital stock company, herein referred to as the Company)

### PARTICIPATING ORGANIZATION APPLICATION FOR
### INDEPENDENT CONTRACTOR COURIER
### OCCUPATIONAL ACCIDENT INSURANCE

Application is hereby made for a policy of accident insurance based upon the following statements and representations:

### SCHEDULE

1.  Name of Policyholder: Chase Bank USA, N.A. as Trustee
    Address: 500 Stanton Christiana Road, Floor 3/OPS 4, Newark, DE 19713
    Type of Business or Organization: Bank
    Covered Affiliates(s) or Subsidiary(ies): None
    Policy Number: OCC 0009100676-A

    Identification of Participating Organization:

    Name of Participating Organization: Express Courier International, Inc.
    Address of Participating Organization: 238 Bedford Way, Franklin, TN 37064
    Type of Business or Purpose of Organization: Independent Contractor Couriers
    Covered Affiliates(s) or Subsidiary(ies): None

    Name and Address of Administrator): Gallagher Transportation Services
    P.O. Box 419797
    Kansas City, MO 64141

2.  Description of Eligible Persons:

    | Class | Description of Class |
    |---|---|
    | I | All active full-time independent contractor/contractee couriers of Express Courier International, Inc. under age 75, earning an average of $250.00 or more per week, contracted with the Participating Organization under a long-term lease agreement of 30 days or more and for whom the required premium has been paid and a completed enrollment form has been signed. |
    | II | All active part-time independent contractor/contractee couriers of Express Courier International, Inc. under age 75, earning an average of $250.00 or less per week, contracted with the Participating Organization under a long-term lease agreement of 30 days or more and for whom the required premium has been paid and a completed enrollment form has been signed. |

3.  Premium Rates:

    Class I .................................................. ....... $92.00 (per Insured Person per month)
    Class II.................................................$61.00 (per Insured Person per month)

Applicable to Class I

4.   Benefits

    A.   Occupational Accident Benefits:

      (1)   X   Accidental Death Benefit:
           Principal Sum ............................................................................$50,000.
           Incurral Period ............................................................................365 days

      (2)   X   Survivor's Benefit:
           Principal Sum ............................................................................$200,000.
           Monthly Benefit Percentage ............................................................1%
           Monthly Benefit Amount..............................................................$2,000.

      (3)   X   Accidental Dismemberment Benefit:
           Principal Sum ............................................................................$250,000.
           Incurral Period ............................................................................365 days

      (4)   X   Paralysis Benefit:
           Principal Sum ............................................................................$250,000.
           Incurral Period ............................................................................365 days

      (5)   X   Temporary Total Disability Benefit:
           Commencement Period (Initial Disability) ............................... 90 days
           Waiting Period ......................................................................... 7 days
           Participation Percentage.............................................................. 66 2/3%
           Maximum Weekly Benefit Amount..............................................$500.
           Maximum Benefit Period ...........................................................104 weeks

      (6)   X   Continuous Total Disability Benefit (not a Covered Loss until the day after the
           Temporary Total Disability Maximum Benefit Period has been reached):
           Participation Percentage.............................................................. 66 2/3%
           Maximum Weekly Benefit Amount..............................................$500.
           Maximum Benefit Period ........................................................... to age 75

      (7)   X   Accident Medical Expense Benefit (Primary):
           Commencement Period............................................................... 90 days
           Deductible Amount ....................................................................$100.
           Maximum Benefit Period ...........................................................104 weeks
           Dental Maximum .................................. $250. per tooth, not to exceed $2,500 per accident.
           Maximum Benefit Amount..........................................................$1,000,000.

      (8)   X   Hemorrhoids Coverage
           Lifetime Maximum Benefit Amount........................................ ..........$5,000.

      (9)   X   Hernia Coverage
           Lifetime Maximum Benefit Amount............................................$5,000.

 

Applicable to Class II

A.  Occupational Accident Benefits:

(1)  X   Accidental Death Benefit:
      Principal Sum ................................................................$50,000.
      Incurral Period.............................................................. 365 days

(2)  X   Survivor's Benefit:
      Principal Sum ..............................................................$200,000.
      Monthly Benefit Percentage .......................................................1%
      Monthly Benefit Amount................................................$1000.

(3)  X   Accidental Dismemberment Benefit:
      Principal Sum ..............................................................$250,000.
      Incurral Period.............................................................. 365 days

(4)  X   Paralysis Benefit:
      Principal Sum ..............................................................$250,000.
      Incurral Period.............................................................. 365 days

(5)  X   Temporary Total Disability Benefit:
      Commencement Period (Initial Disability) ................................. 90 days
      Waiting Period ............................................................... 7 days
      Participation Percentage.................................................. 66 2/3%
      Maximum Weekly Benefit Amount...............................................$250.
      Maximum Benefit Period ................................................104 weeks

(6)  X   Continuous Total Disability Benefit (not a Covered Loss until the day after the
      Temporary Total Disability Maximum Benefit Period has been reached):
      Participation Percentage.................................................. 66 2/3%
      Maximum Weekly Benefit Amount...............................................$250.
      Maximum Benefit Period ................................................. to age 75

(7)  X   Accident Medical Expense Benefit (Primary):
      Commencement Period........................................................ 90 days
      Deductible Amount............................................................$100.
      Maximum Benefit Period ................................................104 weeks
      Dental Maximum ................................ $250. per tooth, not to exceed $2,500 per accident.
      Maximum Benefit Amount..................................................$1,000,000.

(8)  X   Hemorrhoids Coverage
      Lifetime Maximum Benefit Amount...................................................$5,000.

(9)  X   Hernia Coverage
      Lifetime Maximum Benefit Amount...................................................$5,000.


Applicable to Class(es) I & II

B.  Non-Occupational

(1)  X   Accidental Death Benefit:
      Principal Sum ..............................................................$10,000.
      Incurral Period.............................................................. 365 days

(2) _X_ Accidental Dismemberment Benefit:
      Principal Sum............................................................................................$10,000.
      Incurral Period...........................................................................................365 days

(3) _X_ Accident Medical Expense Benefit (Primary):
      Commencement Period............................................................................. 90 days
      Deductible Amount....................................................................................$100.
      Maximum Benefit Period ........................................................................52 weeks
      Dental Maximum ..................................$250. per tooth, not to exceed $1,000 per accident.
      Maximum Benefit Amount .......................................................................$5,000

5.    Limits of Liability:

    A.   Occupational Coverage:
       Per-Insured Person Limit of Liability (Combined Single Limit)......................................$1,000,000.
       (all Covered Losses with respect to
       any one accident)

       Aggregate Limit of Liability ................................................................................$2,000,000.
       (all Covered Losses with respect to all Insured
       Persons in any one accident)

    B.   Non-Occupational Coverage
       Per-Insured Person Limit of Liability (Combined Single Limit)............................................$10,000.
       (all Covered Losses with respect to
       any one accident)

       Aggregate Limit of Liability ................................................................................$20,000.
       (all Covered Losses with respect to all Insured
       Persons in any one accident)

6.    Policy Riders and/or Endorsements:

The following Riders and/or Endorsements are attached to and made part of the Policy as of the Policy Effective Date. Each Rider and/or Endorsement is subject to all provisions, limitations and exclusions of the Policy that are not specifically modified by the Rider and/or Endorsement.

| FORM NO. | DESCRIPTION |
| --- | --- |
| C22614DBG | Hemorrhoids Coverage Rider |
| C22615DBG | Hernia Coverage Rider |
| C22617DBG | Non-Occupational Coverage Rider |
| C22624DBG | Participating Organizational Endorsement |

7.    Policy Period and Signature(s)

| Policy Period: | From: | Policy Effective Date | July 1, 2006 |
| | To: | Policy Termination Date | September 1, 2007 |

Policy Continuous Until Cancelled

Signed by: _____ ) _____ ) ___

Title: _____

Signed at _____ on _____

Witness _____
*(licensed agent where required by law)*



Susan K. Regan
Accident and Health Claims Department
Alpharetta Claims Processing Center
800 551 0824 Customer Service
Susan.regan@chartisinsurance.com

On behalf of:  National Union Fire
Insurance Company of Pittsburgh, PA.

Mr. Willie Shotwell
7504 Appling Estate Drive
Memphis, TN 38133

Copy of letter sent to your attorney representative

May 17, 2012
Attorney Michael Mitchell
5118 Park Avenue Suite 600
Memphis, TN 38117

RE:  Claimant:          Willie Shotwell
     Policyholder:      9100676
     Policy Number:     Express Courier International
     Claim Number:      645 581761
     Date of Loss:      01/03/2008
     Member ID:         R080160030

Dear Mr. Mitchell,

We have completed our review of the above claim in regards to eligibility for Continuous Total Disability (CTD) Benefits.  All policy requirements must be met in order to qualify for benefits.

Our policy requires that your client remain disabled from any occupation for which he is qualified as a result of his work related injury.

As you may recall, upon receipt of notification of Mr. Shotwell's SSDI award, we agreed to issue benefits to bring him current under his CTD policy.  However at that time we stated, this was not admittance of compensability and that we would continue to pay CTD benefits according to the policy so long as our investigation of disability continued.

Continuous Total Disability Benefit is defined as follows under Mr. Shotwell's policy:

### Continuous Total Disability Benefits

If injury to the Insured Person, resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, the Company will pay the Continuous Total Disability Benefit specified below, provided:

Chartis
PO Box 25087
Shawnee Mission, KS  66225
www.chartisinsurance.com

EXHIBIT

3

Page 2
May 17, 2012
Willie Shotwell

1. benefits payable for Temporary Total Disability Covered Loss ceased solely because the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, but the Insured Person remains disabled;
2. the Insured Person is under age 75 on the day after the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached;
3. the Insured Person has been granted a Social Security Disability Award for their disability; and
4. their disability is reasonably expected to continue without interruption until the Insured Person dies.

The Continuous Total Disability Benefit with respect to each month of an Insured Person's Continuous Total Disability is equal to four and three-tenths (4.3) times the weekly benefit for Temporary Total Disability, less the Insured Person's primary Social Security Disability Award.

The Continuous Total Disability Benefit with respect to each month of an Insured Person's Continuous Total Disability is equal to monthly benefit for Temporary Total Disability, less the Insured Person's primary Social Security Disability Award.

The Continuous Total Disability Benefit shall cease on the earliest of the following dates:
1. the date the Insured Person is no longer Continuously Totally Disabled.
2. the date the Insured Person dies.
3. the date the Insured Person's Social Security Disability Award ceases.
4. the date the Insured Person attains age 65.
5. the date the Maximum Benefit Period shown in the Schedule for Continuous Total Disability has been reached.

**Continuous Total Disability, Continuously Totally Disabled** means disability that: (1) prevents an Insured Person from performing the duties of any occupation for which he or she is qualified by reason of education, training or experience; and (2) requires that, and results in, the Insured Person be under Continuous Care.

   Mr. Shotwell states he was injured while "picking up and pulling pallets of copy paper and other boxes out of warehouse". He states he injured his right shoulder and experienced chest pain. Upon examination at the hospital, Mr. Shotwell was diagnosed with a right shoulder strain. Subsequently, a SLAP lesion tear was diagnosed and Mr. Shotwell underwent an arthroscopy on 3/26/2008 and physical therapy. He was released to Light duty by his treating Physician at The East Memphis Orthopedic Group on 4/17/2007. No pushing or pulling, no lifting and no overhead work with the right arm. Based on the fact we insure Mr. Shotwell for the ability to perform his own

Page 3
May 17, 2012
Willie Shotwell

occupation for the first 2 years of Temporary Total Disability (TTD) benefits he remained disabled at that time.

It is noted in a letter from Dr. Lindy dated 7/17/2008, that Mr. Shotwell attempted to return to work and as a result he experienced acute discomfort in his right shoulder and neck. An MRI revealed cervical stenosis, which was felt to be exacerbated by his injury.

Medical records dated 9/18/2008, support Mr. Shotwell remained in physical therapy, and restrictions were assigned by Dr. Lindy that Mr. Shotwell could not lift more than 10-15# and no overhead lifting of more than 3#. These restrictions were to remain effective for the following 6-10 weeks. It is noted by Dr. Lindy on 12/18/2008 that Mr. Shotwell was being referred to a Neurologist for his complaints.

An MRI showed multi-level spondylosis C4-5, C5-6 and C6-7 with bilateral foraminal stenosis "aggravated by work injury with axial neck pain". Mr. Shotwell underwent neck fusion surgery followed by physical therapy. An Independent Medical Examination (IME) was conducted by Dr. Jeffrey Diabach on 8/25/2009. Results of this exam state that treatment was appropriate for Mr. Shotwell's shoulder injury and that no further treatment was needed for his right shoulder. Based on an examination and review of medical records, Dr. Diabach opined that Mr. Shotwell had pre-existing cervical spine spondylosis and degenerative changes which appear to have become symptomatic at the time of the injury. He stated the fusion was not yet solid and that this could take up to one year post surgery. Therefore, we paid TTD benefits through the maximum duration 1/28/2010.

As stated above we began paying Mr. Shotwell CTD benefits, while conducting our investigation to determine if he is disabled "any occupation" as required by the policy. A Functional Capacity Evaluation (FCE) was performed on 3/7/2012. The results of the FCE indicate Mr. Shotwell can work in the Medium physical demand category with waist to shoulder lifting not to exceed 20#, which effectively reduced his compatibilities to Light work. It is also noted that Mr. Shotwell performed with full and consistent effort during the FCE, therefore the results are considered valid of his work capacity as well as his limitations.

On 2/7/2012, an IME was performed inclusive of an independent medical records review. The IME doctor questioned the correlation between Mr. Shotwell's injury and his neck symptomology. He does opine that he could possibly have aggravated his neck during his recovery process related to his shoulder. Dr. Jones confirms that Mr. Shotwell's fusion is solid, yet Mr. Shotwell continues to complain of aches and pains. He notes there is no radicular process or myopathic process going on. He has good strength, he has reasonable motion in his neck as evidenced by the measure

Page 4
May 17, 2012
Willie Shotwell

of the ganiometer. Dr. Jones opined that Mr. Shotwell was not totally disabled, and that he could return to some type of Light work.

Based on these findings, a vocational assessment was performed. It was determined that Mr. Shotwell could perform occupations within his current physical restrictions and limitations. Mr. Shotwell, as well as his treating provider Kristen Wilson, MSN, FNP-PC, state Mr. Shotwell is currently undergoing treatment on his thoracic spine. There is no evidence this is related to his occupational injury on 1/3/2008.

It is noted that Mr. Shotwell has a High School education. He reports having worked as a Driver from approximately 1997 through 1/6/2008. It is noted that Mr. Shotwell does not appear to be motivated to return to work. He stated he does not agree with the fact he has been declared able to work in a light duty demand capacity.

Occupations identified as those Mr. Shotwell can perform are: Order Clerk, Surveillance System Monitor, Parking Lot Attendant, Escort Vehicle Driver, Charge Account Clerk and Meter Reader. This is not meant to represent a complete list of occupations that Mr. Shotwell can perform.

Therefore, based on our complete medical and vocational investigation benefits are not payable for CTD as Mr. Shotwell does not meet the policy requirements for Continuous Total Disability as required above.

Of course, we must respectfully request that you understand that we reserve all rights and defenses under the policy and the law, and none of our communications may be construed so as to waive any of those rights.

If you have any questions, please feel free to contact our office.


Sincerely,


Susan K. Regan
Special Risk/Global Claims Manager

DONALD E. BOURLAND*
JOHN J. HEFLIN III
ROBERT K. ALVAREZ*
LANCELOT L. MINOR III*
PAUL A. MATTHEWS*
ROBERT J. PINSTEIN
DAVID L. BOURLAND
JOHN MARSHALL JONES
DAVID M. RUDOLPH*
KENNETH P. JONES
M. MATTHEW THORNTON**
SCOTT B. PEATROSS**

**BOURLAND
HEFLIN
ALVAREZ
MINOR &
MATTHEWS**, PLC

ATTORNEYS AT LAW

5400 POPLAR AVENUE
SUITE 100
MEMPHIS, TENNESSEE 38119-3660
TELEPHONE (901) 683-3526
FAX (901) 763-1037

WWW.BHAMMLAW.COM

ALBERT C. RICKEY (1917-2003)
AARON SHAPIRAR (RET)

*ALSO ADMITTED IN MISSISSIPPI
**ALSO ADMITTED IN ARKANSAS

May 21, 2012

**BY EMAIL (susan.regan@chartisinsurance.com) & U.S. MAIL**
Ms. Susan Regan, Accident & Health Claims Department
Chartis
P.O. Box 25987
Shawnee Mission, KS 66225

Re:     **Claimant and Our Client: Willie Shotwell**
        **Occupational Accident Insurance Policy**
        **Policy Holder: Express Courier International**
        **Policy No.: 9100676**
        **Claim No.: 645581761**
        **Member ID: R080160030**

Dear Ms. Regan:

As you know, I represent Mr. Willie Shotwell regarding his insurance benefits and coverage. Mr. Shotwell shared with me a copy of your May 17, 2012 letter to him terminating his Continuous Total Disability Benefits. We hereby appeal and seek reconsideration of this erroneous decision.

As you are aware, the Social Security Administration has determined that Mr. Shotwell has been disabled since September 1, 2009, remains disabled, and is unable to work. Your decision is patently inconsistent with the Social Security Administration's decision.

Please send me a complete copy of all documents related to this matter, including claims files, medical records, policies, amendments, guidelines, correspondence, functional capacity evaluations, IME's, resumes, notes, and any related documents.

Mr. Shotwell reserves his all of his rights. We look forward to your response.

Very truly yours,

BOURLAND, HEFLIN, ALVAREZ,
MINOR & MATTHEWS, PLC

Kenneth P. Jones

KPJ
cc:    Mr. Willie Shotwell

**EXHIBIT**

4

DONALD E. BOURLAND*
JOHN J. HEFLIN III
ROBERT K. ALVAREZ*
LANCELOT L. MINOR III*
PAUL A. MATTHEWS*
ROBERT J. PINSTEIN
DAVID L. BOURLAND
JOHN MARSHALL JONES
DAVID M. RUDOLPH**
KENNETH P. JONES
M. MATTHEW THORNTON**
SCOTT B. PEATROSS**

**BOURLAND**
**HEFLIN**
**ALVAREZ**
**MINOR &**
**MATTHEWS**, PLC
ATTORNEYS AT LAW

5400 POPLAR AVENUE
SUITE 100
MEMPHIS, TENNESSEE 38119-3660
TELEPHONE (901) 683-3526
FAX (901) 763-1037

WWW.BHAMMLAW.COM

ALBERT C. RICKEY (1917-2003)
AARON SHANKMAN (RET)
*ALSO ADMITTED IN MISSISSIPPI
**ALSO ADMITTED IN ARKANSAS

May 24, 2012

_BY EMAIL (susan.regan@chartisinsurance.com) &_
_CERTIFIED U.S. MAIL, RETURN RECEIPT REQUESTED_
Ms. Susan K. Regan, Accident & Health Claims Department
Chartis
P.O. Box 25987
Shawnee Mission, KS 66225

Re:   **Claimant and Our Client: Willie Shotwell**
      **Occupational Accident Insurance Policy**
      **Policy Holder: Express Courier International**
      **Policy No.: 9100676**
      **Claim No.: 645581761**
      **Member ID: R080160030**
      _**Our File No.: 12-044**_

Dear Ms. Regan:

As you know, we represent Mr. Willie Shotwell regarding his insurance benefits and coverage under the referenced policy. This letter follows up on my letter to you dated May 21, 2012, appealing Chartis' erroneous decision to terminate Mr. Shotwell's Continuous Total Disability Benefits.

We hereby demand that Chartis / National Union Fire Insurance Company of Pittsburgh, PA pay Mr. Shotwell's claim. As you know, Mr. Shotwell is totally disabled pursuant to the decision of the United States Social Security Administration. Chartis' denial of Mr. Shotwell's claim is in bad faith under Tennessee law. Please be advised that if Chartis does not pay the claim, Mr. Shotwell may pursue a cause of action against Chartis / National Union Fire Insurance Company of Pittsburgh, PA, for bad faith refusal to honor insurance contract under Tenn. Code Ann. § 56-7-105, including without limitation, a claim for the 25% statutory penalty plus an award of his reasonable attorney fees. Mr. Shotwell reserves all of his rights and claims.

Very truly yours,

BOURLAND, HEFLIN, ALVAREZ,
MINOR & MATTHEWS, PLC

Kenneth P. Jones

KPJ
cc:   Mr. Willie Shotwell

**EXHIBIT**

5

DONALD E. BOURLAND*
JOHN J. HEFLIN III
ROBERT K. ALVAREZ*
LANCELOT L. MINOR III*
PAUL A. MATTHEWS*
ROBERT J. PINSTEIN
DAVID L. BOURLAND
JOHN MARSHALL JONES
DAVID M. RUDOLPH**
KENNETH P. JONES
M. MATTHEW THORNTON**
SCOTT B. PEATROSS**



**BOURLAND
HEFLIN
ALVAREZ
MINOR &
MATTHEWS**, PLC
ATTORNEYS AT LAW

5400 POPLAR AVENUE
SUITE 100
MEMPHIS, TENNESSEE 38119-3660
TELEPHONE (901) 683-3526
FAX (901) 763-1037

WWW.BHAMMLAW.COM

ALBERT C. RICKEY (1917-2003)
AARON SHANKMAN (1918-2011)

*ALSO ADMITTED IN MISSISSIPPI
**ALSO ADMITTED IN ARKANSAS

June 26, 2012

*BY EMAIL (susan.regan@chartisinsurance.com) &*
*CERTIFIED U.S. MAIL, RETURN RECEIPT REQUESTED*
*IMMEDIATE ATTENTION REQUESTED*
Ms. Susan K. Regan, Accident & Health Claims Department
Chartis
P.O. Box 25987
Shawnee Mission, KS 66225

Re:  **Claimant and Our Client: Willie Shotwell**
     **Occupational Accident Insurance Policy**
     **Policy Holder: Express Courier International**
     **Policy No.: 9100676**
     **Claim No.: 645581761**
     **Member ID: R080160030**
     *Our File No.: 12-044*

Dear Ms. Regan:

       As you know, we represent Mr. Willie Shotwell regarding his insurance benefits and coverage under the referenced policy. This letter follows up on my letters to you dated May 21 and May 24, 2012, appealing Chartis' erroneous decision to terminate Mr. Shotwell's Continuous Total Disability Benefits, copies of which are attached for your reference, to which we have not received any response.

       Please respond to our letters within 7 days. Thank you.

                         Very truly yours,

                         BOURLAND, HEFLIN, ALVAREZ,
                         MINOR & MATTHEWS, PLC

                         Kenneth P. Jones

KPJ
cc:   Mr. Willie Shotwell

**EXHIBIT**
6

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ms. Susan K. Regan
Chartis
P.O. Box 25987
Shawnee Mission, KS
66225

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery
JUL     03 2012

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail     ☐ Express Mail
☐ Registered     ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)     7008 1830 0001 4262 8859

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL     RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  Susan K. Regan
Street, Apt. No.;  P.O. Box 25987
or PO Box No.
City, State, ZIP+4  Shawnee Mission, KS 66225

PS Form 3800, August 2006     See Reverse for Instructions

7008 1830 0001 4262 8859



DONALD E. BOURLAND*
JOHN J. HEFLIN III
ROBERT K. ALVAREZ*
LANCELOT L. MINOR III*
PAUL A. MATTHEWS*
ROBERT J. PINSTEIN
DAVID L. BOURLAND
JOHN MARSHALL JONES
DAVID M. RUDOLPH**
KENNETH P. JONES
M. MATTHEW THORNTON**
SCOTT B. PEATROSS**

# BOURLAND HEFLIN ALVAREZ MINOR & MATTHEWS, PLC
ATTORNEYS AT LAW

5400 POPLAR AVENUE
SUITE 100
MEMPHIS, TENNESSEE 38119-3660
TELEPHONE (901) 683-3526
FAX (901) 763-1037

WWW.BHAMLAW.COM

ALBERT C. RICKEY (1917-2003)
AARON SHANKMAN (1918-2011)

*ALSO ADMITTED IN MISSISSIPPI
**ALSO ADMITTED IN ARKANSAS

July 31, 2012

***BY EMAIL (Charles.Bothem@chartisinsurance.com) &
CERTIFIED U.S. MAIL, RETURN RECEIPT REQUESTED
IMMEDIATE ATTENTION REQUESTED***

Mr. Charles Bothem
Chartis
503 Carr Road
Wilmington, DE 19809

Re:  **Claimant and Our Client: Willie Shotwell**
**Occupational Accident Insurance Policy**
**Policy Holder: Express Courier International**
**Policy No.: 9100676**
**Claim No.: 645581761**
**Member ID: R080160030**
***Our File No.: 12-044***

Dear Mr. Bothem:

As you know, we represent Mr. Willie Shotwell regarding his insurance benefits and coverage under the referenced policy. This follows up on my multiple previous letters to Chartis, including my letter dated July 17, 2012, to which you have not responded.

On July 12, 2012, I received a cd from Chartis containing only 8 pages of medical records. Chartis has almost completely failed to respond to my request for the following documents in my letter dated May 21, 2012:

> Please send me a complete copy of all documents related to this matter, including claims files, medical records, policies, amendments, guidelines, correspondence, functional capacity evaluations, IME's, resumes, notes, and any related documents.

Please also send me copies of all documents related to Karman Knight, who performed the telephone "Vocational Assessment" on Mr. Shotwell, including her resume, her contract with Chartis, how many claims she has recommended that Chartis deny, how many claims she has recommended that Chartis grant, a record of Chartis' payments to her during the past 5 years, and related documents.

Please also reference my letter to Chartis dated May 24, 3012 regarding Chartis' bad-faith denial of insurance benefits in violation of Tenn. Code Ann. § 56-7-105.

```
EXHIBIT

7
```

BOURLAND
HEFLIN
ALVAREZ
MINOR &
MATTHEWS, PLC

*Mr. Charles Bothem*
*Chartis*
*July 31, 2012*
*Page No. 2*

Please restore Mr. Shotwell's insurance benefits and respond to this letter by August 7, 2012. Mr. Shotwell reserves all of his rights.

Very truly yours,

BOURLAND, HEFLIN, ALVAREZ,
MINOR & MATTHEWS, PLC

Kenneth P. Jones

KPJ

cc:    Mr. Willie Shotwell

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr Charles Bothem
Charlis
503 Carr Road
Wilmington, DE 19809

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X [signature]  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

[postmark: WILMINGTON JUL 20 2012 ...9998]

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)

7008 1830 0001 4262 8880

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To
Mr Charles Bothem
Street, Apt. No.; or PO Box No.
503 Carr Rd
City, State, ZIP+4
Wilmington DE 19809

PS Form 3800, August 2006    See Reverse for Instructions

7008 1830 0001 4262 8927

## Kenneth Jones

| | |
|---|---|
| **From:** | Kenneth Jones |
| **Sent:** | Wednesday, July 11, 2012 9:44 AM |
| **To:** | 'Bothem, Charles' |
| **Subject:** | RE: Claimant: Willie Shotwell |
| **Importance:** | High |
| **Attachments:** | KPJ.to.Regan.Chartis.05-21-2012.pdf; KPJ.to.Regan.Chartis.06-26-2012.pdf; KPJ.to.Regan.Chartis.05-24-2012.pdf |

Mr. Bothem:

Per your request, please see attached three (3) letters from me to Chartis, dated May 21, May 24, and June 26, 2012.

Kenneth P. Jones
Attorney at Law
Bourland Heflin Alvarez Minor & Matthews, PLC
5400 Poplar Avenue, Suite 100
Memphis, TN 38119-3660
Telephone: 901-683-3526
Facsimile: 901-763-1037
E-mail: kenjones@bhammlaw.com
Website: www.bhammlaw.com

Bourland Heflin Alvarez Minor & Matthews, PLC is a full-service law firm. For more information, please visit us at www.bhammlaw.com.

This message may be confidential or be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please reply to the sender or contact our firm at 901-683-3526, let us know that you have received the message in error, and then delete it.

Nothing in this message is intended to be used, or may be used, to avoid any penalty under federal tax laws. This message was not written to support the promotion or marketing of any transaction. Please contact the firm if you wish to engage us to provide formal written advice as to tax issues.

Thank you.

---

**From:** Bothem, Charles [mailto:Charles.Bothem@chartisinsurance.com]
**Sent:** Wednesday, July 11, 2012 9:18 AM
**To:** Kenneth Jones
**Subject:** RE: Claimant: Willie Shotwell

Can you send me the correspondence; I am not sure what I need to respond to.

Chuck Bothem
302 765 1699

503 Carr Road
Wilmington, De 19809
fax  302 830 4530



8/27/2012

**From:** kjones@bhammlaw.com [mailto:kjones@bhammlaw.com]
**Sent:** Wednesday, June 27, 2012 5:21 PM
**To:** Bothem, Charles
**Cc:** khanks@bhammlaw.com
**Subject:** RE: Claimant: Willie Shotwell
**Importance:** High

Mr. Botham:

Please respond to our outstanding correspodence as soon as possible. Thank you.

Kenneth P. Jones
Attorney at Law
Bourland Heflin Alvarez Minor & Matthews, PLC
5400 Poplar Avenue, Suite 100
Memphis, TN 38119-3660
Telephone: 901-683-3526
Facsimile: 901-763-1037
E-mail: kenjones@bhammlaw.com
Website: www.bhammlaw.com

Bourland Heflin Alvarez Minor & Matthews, PLC is a full-service law firm. For more information, please visit us at www.bhammlaw.com.

This message may be confidential or be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please reply to the sender or contact our firm at 901-683-3526, let us know that you have received the message in error, and then delete it.

Nothing in this message is intended to be used, or may be used, to avoid any penalty under federal tax laws. This message was not written to support the promotion or marketing of any transaction. Please contact the firm if you wish to engage us to provide formal written advice as to tax issues.

Thank you.

---

**From:** Kym Hanks
**Sent:** Wednesday, June 27, 2012 8:08 AM
**To:** Kenneth Jones
**Subject:** FW: Claimant: Willie Shotwell

---

**From:** Regan, Susan K [mailto:Susan.Regan@chartisinsurance.com]
**Sent:** Wednesday, June 27, 2012 6:24 AM
**To:** Kym Hanks
**Cc:** Bothem, Charles
**Subject:** RE: Claimant: Willie Shotwell

Kym- I am no longer handling Mr Shotwell's file. I have cc:d Chuck Bothem who is the manager who will be reassigning this claim.

Susan K Regan
A&H Special Risk Global Manager
Primary Claims A&H Division

8/27/2012

678.240.1942 Telephone
866.480.4404 Facsimile
susan.regan@chartisinsurance.com

Chartis
P.O. Box 25987
Shawnee Mission, KS 66225
www.chartisinsurance.com

*Delivering Technical & Service Excellence...Every Day!*
IMPORTANT NOTICE:
The information in this email (and any attachments) is confidential. If you are not the intended recipient, you must not use or disseminate the information. If you have received this email in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Chartis for any loss or damage arising in any way from its use.

---

**From:** khanks@bhammlaw.com [mailto:khanks@bhammlaw.com]
**Sent:** Tuesday, June 26, 2012 5:35 PM
**To:** Regan, Susan K
**Subject:** Claimant: Willie Shotwell

Ms. Regan,

Attached please find a copy of correspondence from Ken Jones. If you have any questions, please call.

Sincerely,

# Kym Hanks

Legal Secretary to John J. Heflin, III., Kenneth P. Jones, and David M. Rudolph
Bourland Heflin Alvarez Minor & Matthews, PLC
5400 Poplar Avenue, Suite 100
Memphis, TN 38119
(901) 683-3526
khanks@bhammlaw.com


Bourland Heflin Alvarez Minor & Matthews, PLC is a full-service law firm. For more information, please visit us at www.bhammlaw.com.

This message may be confidential or be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please reply to the sender or contact our firm at 901-683-3526, let us know that you have received the message in error, and then delete it.

Nothing in this message is intended to be used, or may be used, to avoid any penalty under federal tax laws. This message was not written to support the promotion or marketing of any transaction. Please contact the firm if you wish to engage us to provide formal written advice as to tax issues.

Thank you.

IN THE CHANCERY COURT OF TENNESSEE

FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

WILLIE SHOTWELL,

Plaintiff,

vs.                                          NO. CH-12-1372-I
                                             JURY DEMANDED
NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

Defendant.

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO DEFENDANT

Pursuant to the Tennessee Rules of Civil Procedure, Plaintiff, Willie Shotwell ("Shotwell"), submits his First Request for Production of Documents and Tangible Things to Defendant, National Union Fire Insurance Company of Pittsburg, PA, and requests that Defendant produce and make available for inspection and copying the following requested documents its or its attorneys' possession, custody, or control described herein within thirty (30) days from the date of service, at the offices of counsel for Plaintiff, Bourland, Heflin, Alvarez, Minor & Matthews, PLC, 5400 Poplar Avenue, Suite 100, Memphis, Tennessee 38119.

For the purpose of responding to these Requests, the following definitions shall apply:

(a)    The words "and" and "or" shall be interpreted either conjunctively or disjunctively to bring within the scope of these Requests any information that might otherwise be construed to be outside of the scope of these Requests, and shall not be interpreted so as to exclude any information otherwise within the scope of any one or more of these Requests.

(b)    The singular and plural of words shall be interpreted either in the singular or plural to bring within the scope of this Request any information that might otherwise be construed to be outside the scope of this Request, and shall not be interpreted so as to exclude any information otherwise within the scope of any one or more of these Requests.

(c)    The words "person" or "persons" shall include natural persons, firms, partnerships, associations, joint ventures, corporations, limited liability companies, agencies, boards, authorities, commissions and any other form of legal or informal entity.

(d)    The term "document" shall be defined as the original, and if the original is unavailable, any copy of any document, tangible thing, electronic information, or other subject matter having any informational content whatsoever, which is now in the actual or constructive possession, custody or control of you, your employees, agents, attorneys, or representatives of any type whatsoever. Without limiting the generality of the foregoing, and for the purposes of illustration only, the term "document" shall include, but not be limited to the following:

(1)    Handwritten, printed, typewritten, computer-generated, recorded, graphic or photographic material of any kind or character;

(2)    Any and all tapes, disks, and non-duplicate copies and transcripts thereof;

2

(3)    Any and all memoranda, records, reports, notes, letters, charts, correspondence, graphs, summaries, evaluations, drawings, applications, insurance claim forms, reports, statements, notations of conversations or conferences, inter-office and intra-office communications, computer printouts, teletype messages, cables, telex transcriptions, telegrams, teletype messages, facsimile communications, notices, data compilations;

(4)    Any and all deeds, mortgages, liens, HUD-1 forms, closing documents, financial statements and records, pay stubs, tax returns, W-2 forms, accounting statements and records, invoices, bills, receipts of payment, fee statements, vouchers;

(5)    Any and all electronic data, photographs, movies, tapes, electromagnetic audio or video recordings, microfilms, microfiche, e-mail, computer data, computer cards, computer tapes, computer disks or diskettes, computer programs, sound records and any and all other records of any and every description;

(6)    Any and all complaints, answers, interrogatories, requests for production of documents, answers to interrogatories, answers to requests for production of documents, deposition transcripts, settlement agreements, release agreements, judgments, consent orders and sentencing orders pertaining to any other litigation or criminal matter; and

(7)    Any and all drafts or copies of any of the objects defined as documents in the above parts (1) - (6) above, which are not identical to the original of such document.

(e)    Pursuant to Rule 26 of the Tennessee Rules of Civil Procedure, you are under a duty to supplement your responses to reflect information acquired after production of the requested documents.

3

(f)     If any document responsive to any of the foregoing Requests is not produced due to a claim of privilege, produce as much of the document as to which a privilege is not asserted, and with respect to the portion withheld, state or identify:

(1)     The basis for the claim of privilege; and

(2)     The date of the document; and

(3)     The general subject matter of the document; and

(4)     The author of the document; and

(5)     The addressee and any other persons to whom the contents of the document or the document itself has been communicated; and

(6)     The person or persons now in possession of the original document and, to the extent known, the location of all copies of the document; and

(7)     The paragraph of these Requests to which the document is responsive.

(g)     If you or any of your employees, attorneys, accountants, employees (past or present), or agents of any kind, have possession or control of a document called for under this Request, and such document has been lost, misplaced, misfiled, obliterated, purged, mutilated, erased or otherwise destroyed, or is not presently in the possession or control of you, your employees, attorneys, accountants, employees (past or present), or agents, describe the document, state the date of its loss or destruction, and describe the circumstances surrounding that loss or destruction.

(h)     To the extent possible, documents shall be produced in their original binders or files and grouped to indicate the Request to which they are responsive.

4

## REQUESTS FOR PRODUCTION

In accordance with the preceding definitions and instructions and the Tennessee Rules of Civil Procedure, please produce the following documents:

**REQUEST FOR PRODUCTION NO. 1:** All documents related to or referencing Shotwell's claims under the subject insurance policy (including without limitation, his claims for medical benefits, Temporary Total Disability ("TTD") Benefits, and Continuous Total Disability ("CTD") Benefits), including without limitation the entire claim file, telephone logs, action logs, medical records, communications, emails, letters, analyses, requests for review, medical opinions, documents related to health care provider consultants, and any related documents.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

**REQUEST FOR PRODUCTION NO. 2:** All documents of any nature which support, refute, or otherwise relate to any of the defenses you assert to the causes of action, facts, or requests for relief set forth in Shotwell's Complaint.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

**REQUEST FOR PRODUCTION NO. 3:**   All documents which are referenced in or were utilized in preparing your Answers to Shotwell's First Set of Interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

**REQUEST FOR PRODUCTION NO. 4:**   All documents which comprise, reflect, or refer to communications between Defendant or its agents and Shotwell or his agents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

**REQUEST FOR PRODUCTION NO. 5:**   All documents which comprise, reflect, or refer to communications between you and any persons other than Shotwell (including without limitation, health care providers, Express Courier International, Inc., Gallagher Transportation Services, or Chase Bank USA, NA) related to Shotwell's claims under the insurance policy or the claims and defenses asserted in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

6

**REQUEST FOR PRODUCTION NO. 6:** All documents that any person you expect to call as an expert witness at the trial of this case received, reviewed, referred to, or relied upon in their study and review of this matter or in the formulation of any of their opinions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**


**REQUEST FOR PRODUCTION NO. 7:** All documents related to the determination of the United States Social Security Administration ("SSA") that Shotwell is disabled and entitled to Social Security Disability Income ("SSDI") benefits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**


**REQUEST FOR PRODUCTION NO. 8:** All documents related to your determination that Shotwell was Temporarily Totally Disabled and Continuously Totally Disabled under the terms of the Policy and eligible for TTD Benefits and CTD Benefits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

**REQUEST FOR PRODUCTION NO. 9:** All documents related to your subsequent determination that Shotwell is no longer Continuously Totally Disabled under the terms of the Policy and is no longer eligible for CTD Benefits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**


**REQUEST FOR PRODUCTION NO. 10:** All documents related to any instructions, policies, procedures, handbooks, references, or guidelines that you utilized, relied upon, or referenced in making any benefits determinations related to Shotwell's claims under the insurance policy.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**


**REQUEST FOR PRODUCTION NO. 11:** All documents related to any health care providers (whether employees, agents, independent contractors, or otherwise) that you utilized in analyzing any of Shotwell's claims under the insurance policy, including without limitation for each such health care provider, his/her resume, contract or agreement with you, opinions, reports, questions, communications, records of payment for services, and any related documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

8

**REQUEST FOR PRODUCTION NO. 12:** All documents related to the insurance policy at issue in this case, including without limitation, all versions and revisions of the policy, any related agreements or contracts, applications, endorsements, riders, forms, addenda, changes, notices, summaries, and related documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Respectfully submitted,

Kenneth P. Jones (#16168)

BOURLAND HEFLIN ALVAREZ MINOR & MATTHEWS, PLC
5400 Poplar Ave Ste 100
Memphis, TN 38119
(901) 683-3526 (phone)
(901) 763-1037 (fax)
kenjones@bhammlaw.com
Counsel for Plaintiff, Willie Shotwell

**CERTIFICATE OF SERVICE**

I certify that I have mailed a copy of the foregoing to:

National Union Fire Insurance Company of Pittsburgh, PA
C/o its Registered Agent
Tennessee Department of Commerce and Insurance
500 James Robertson Pkwy
Nashville, TN 37243-1204

This the 4th day of September, 2012.

9

IN THE CHANCERY COURT OF TENNESSEE

FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

WILLIE SHOTWELL,

Plaintiff,

vs.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

Defendant.

NO. CH-12-1372-I
JURY DEMANDED

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

Pursuant to the Tennessee Rules of Civil Procedure, Plaintiff, Willie Shotwell ("Shotwell"), propounds his First Set of Interrogatories to Defendant, National Union Fire Insurance Company of Pittsburgh, PA, to be answered separately and fully under oath by Defendant, within thirty (33) days from date of service.

A. Preliminary Matters and Definitions.

(1)     These Interrogatories are continuing in nature, and to the extent that any answers thereto may be enlarged, expanded upon, modified, or corrected as a result of any change in circumstances, including but not limited to the discovery of additional responsive information subsequent to the filing of your answers hereto, you are requested to promptly supply counsel for Shotwell with amended or supplemental answers as required by Rule 26 of the Tennessee Rules of Civil Procedure.

(2)     The terms "identity" or "identify" as used herein, with respect to any person, mean to provide the name, current residence address, current residence telephone number, current business address, current business telephone number, and the occupation or job title of that person; with respect to any other entity, those terms mean to provide the name by which said entity is commonly known, the current address of its principal place of business, and the nature of business currently conducted by that entity; with respect to any document, those terms mean to provide the date of the document, the identity of the author or preparer of the document, the nature of the document, and the title (if any) of the document.

(3)     The term "document" as used herein means any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the original and each copy, regardless of origin or location, of any book, pamphlet, periodical, letter, memorandum (including memoranda, note or report of a meeting or conversation) or any other written, typed, reported, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, including electronic data and e-mails, which is in your possession, custody or control or which once was, but is no longer, in your possession, custody or control.

(4)     The term "you" as used herein means the Defendant.   These Interrogatories are directed to the Defendant, but include inquiry regarding information within the knowledge of the Defendant, its attorney(s) or anyone else acting on its behalf.

(5)     For the purposes of framing your responses to these Interrogatories, wherever possible, the singular should be read to include the plural and vice versa.

(6)     With respect to each of the following Interrogatories, in addition to supplying the information requested, please identify any and all documents that support, refer to, or evidence the subject matter of each Interrogatory in your answers thereto.  If any or all of the documents identified herein are no longer in your possession, custody or control because of destruction, loss, or any other reason, then you are requested to identify each such document fully, including the nature of the document, its date, the identify of the person who prepared the document, and the identity of the person or entity for whom it was prepared, and to

2

the extent possible, you are requested to summarize the contents of the document and state the manner and date of the disposition thereof.

(7)     If any of the Interrogatories are not answered on the basis of privilege, please include in your response to each such Interrogatory a written statement evidencing:

        (a)     The nature of the privilege claimed;

        (b)     The date of any privileged communication;

        (c)     The identity of the persons present at such communication; and

        (d)     A brief description of the privilege claim or privileged communication sufficient to allow the Court to rule on a motion to compel.

B. <u>Interrogatories</u>.

Pursuant to the Tennessee Rules of Civil Procedure and consistent with the preceding preliminary matters and definitions, please answer under oath the following specific Interrogatories:

**INTERROGATORY NO. 1**: Please identify each person who provided information used in responding to these Interrogatories or the accompanying Request for Production of Documents. As to each such person, briefly describe the information he or she possesses relevant to the claims asserted in the Complaint,

3

any defenses thereto, the subject insurance policy, Shotwell's claims upon the insurance policy, or your handling of Shotwell's claims.

**ANSWER TO INTERROGATORY NO. 1**:


**INTERROGATORY NO. 2**:   Identify every person known to you, your attorney or anyone acting in your behalf who has knowledge of any discoverable facts relevant to this action, including but not limited to any person having knowledge of the facts and circumstances or events relating to the claims asserted in the Complaint, any defenses thereto, the subject insurance policy, Shotwell's claims upon the insurance policy, and your handling of Shotwell's claims.

**PLEASE TAKE NOTICE THAT SHOTWELL WILL OBJECT TO ANY PERSON TESTIFYING AS A WITNESS FOR DEFENDANT WHO IS NOT IDENTIFIED IN THE ANSWER TO THIS INTERROGATORY.**

**ANSWER TO INTERROGATORY NO. 2**:


**INTERROGATORY NO. 3**:   Describe in detail the discoverable facts which are known by each person you identified in your response to Interrogatory No. 2.

**ANSWER TO INTERROGATORY NO. 3**:

4

**INTERROGATORY NO. 4**:  Identify all persons whom you believe to have expert knowledge relevant to this case which you believe would qualify for admission under Rules 702, 703 and 705 of the Tennessee Rules of Evidence, and as to each person, state each opinion expected to be offered; the subject matter on which the expert is expected to testify; the substance of facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the witness' qualifications (including a list of all publications authored in the previous ten years); a list of all other cases in which, during the previous four years, the witness testified as an expert; and a statement of the compensation to be paid for the expert's study and testimony in this case.

**PLEASE TAKE NOTICE THAT SHOTWELL WILL OBJECT TO ANY PERSON TESTIFYING AS AN EXPERT AT TRIAL ON BEHALF OF DEFENDANT WHO IS NOT IDENTIFIED IN THE ANSWER TO THIS INTERROGATORY.**

**ANSWER TO INTERROGATORY NO. 4**:

**INTERROGATORY NO. 5**:  Please identify any investigative reports, photographs, written statements, recorded statements, or similar documents, electronic information or tangible things regarding the subject matter of the pending action and the investigation of any of the facts or circumstances upon which the allegations in the Complaint or your response to the Complaint and defenses are based.  As to each statement, state the date taken, by whom taken,

whether the person gave a written, oral or recorded statement, and the location and custodian of each written or recorded statement.

**ANSWER TO INTERROGATORY NO. 5**:


**INTERROGATORY NO. 6**: Describe or produce for inspection and copying, each document in your custody or control or of which you have knowledge that concerns or relates to Shotwell's claims under the insurance policy, including your decisions to grant Shotwell's claims for Temporary Total Disability ("TTD") and for Continuous Total Disability ("CTD") Benefits and your subsequent decision to terminate Shotwell's claim for CTD Benefits.

**ANSWER TO INTERROGATORY NO. 6**:


**INTERROGATORY NO. 7**: Identify all persons who assisted in providing information or documents concerning or relating to your answers to these Interrogatories or your responses to Shotwell's Request for Production of Documents.

**ANSWER TO INTERROGATORY NO. 7**:


**INTERROGATORY NO. 8**: If you contend that any admission has been made by any party to this action, with respect to each such admission, describe and

6

explain the substance and date thereof; identify the person or entity making the admission; and identify and describe all individuals who were witnesses or have knowledge regarding the admission.

**ANSWER TO INTERROGATORY NO. 8**:


**INTERROGATORY NO. 9**: Describe in detail the facts concerning or relating to any defenses you assert in this suit.

**ANSWER TO INTERROGATORY NO. 9**:


**INTERROGATORY NO. 10**: Quantify and explain in detail the calculation of the amount of the monthly CTD Benefit that you paid to Shotwell prior to terminating that benefit.

**ANSWER TO INTERROGATORY NO. 10**:


**INTERROGATORY NO. 11**: Identify all officers, directors, employees, physicians, health care professionals, agents, independent contractors, or consultants of Defendant involved in any way with processing, analyzing, managing, deciding, or responding to Shotwell's claims under the insurance policy, and explain in detail the particular role or involvement of each such person regarding Shotwell's claims.

7

**ANSWER TO INTERROGATORY NO. 11**:


**INTERROGATORY NO. 12**: Identify all documents by nature (e.g., letter, memorandum, etc.), date, author, addressee and recipients, upon which you utilized in any way in answering or attempting to answer any of these interrogatories or Shotwell's request for production of documents.

**ANSWER TO INTERROGATORY NO. 12**:


**INTERROGATORY NO. 13**: Identify, by date, amount, and purpose, each payment that you made to Shotwell under or related to the insurance policy.

**ANSWER TO INTERROGATORY NO. 13**:


**INTERROGATORY NO. 14**: Identify all communications, whether written or oral, regarding the facts, circumstances, or events relating to the claims asserted in the Complaint, any defenses thereto, the subject insurance policy, Shotwell's claims upon the insurance policy, and your handling of Shotwell's claims, between you and Shotwell or any third person, from January 1, 2008 through the present, providing the date, the recipient, and the content of each such communication.  This Interrogatory may be satisfied, with respect to written communications only, by production of those written communications.

8

**ANSWER TO INTERROGATORY NO. 14**:


**INTERROGATORY NO. 15**: Identify any guidelines, policies, instructions, procedures, handbooks, manuals, references, or similar materials that you utilized, relied upon, or referred to in analyzing or making benefit determinations upon Shotwell's claims under the insurance policy.

**ANSWER TO INTERROGATORY NO. 15**:


Respectfully submitted,

Kenneth P. Jones (#16168)

BOURLAND HEFLIN ALVAREZ MINOR & MATTHEWS, PLC
5400 Poplar Ave Ste 100
Memphis, TN 38119
(901) 683-3526 (phone)
(901) 763-1037 (fax)
kenjones@bhammlaw.com
Counsel for Plaintiff, Willie Shotwell

## CERTIFICATE OF SERVICE

I certify that I have mailed a copy of the foregoing by U.S. Mail, postage prepaid, to:

National Union Fire Insurance Company of Pittsburgh, PA
C/o its Registered Agent
Tennessee Department of Commerce and Insurance
500 James Robertson Pkwy
Nashville, TN 37243-1204

This the 4th day of September, 2012.

9